## In re McCULLOUGH TRUCKING CO.

### MILBERG v. McCULLOUGH.

(Circuit Court of Appeals, Third Circuit. August 20, 1923.)

Nos. 2969, 2970.

1. **Chattel mortgages ⬥═63—Substantial compliance with statute as to affidavit of "consideration" sufficient.**

   In the absence of fraud, it is enough that there be substantial compliance with Chattel Mortgage Act N. J. § 4, requiring a chattel mortgage, not accompanied by delivery and change of possession of chattels, to have annexed thereto an affidavit of mortgagee stating the "consideration" of the mortgage (that is, the consideration actually received by the mortgagor) to save it from being void as against creditors of mortgagor; and if the affidavit, though inartificially drawn, in some way shows this consideration and how it came into existence, it is sufficient; but any substantial deviation from the truth invalidates the mortgage.

2. **Chattel mortgages ⬥═63—Affidavit as to consideration held not substantial compliance with statute.**

   Mortgagee's affidavit attached to chattel mortgage, stating that its consideration is a certain number of notes, totaling a certain amount, and that there is due on the mortgage such amount with interest from a certain day, and not disclosing whose notes were secured or the nature of the obligation for which they were given, *held* not a substantial compliance with Chattel Mortgage Act N. J. § 4.

3. **Chattel mortgages ⬥═63—Affidavit as to consideration held a substantial compliance with statute.**

   Mortgagee's affidavit attached to a chattel mortgage stating the consideration of the mortgage to be a note of a certain amount, showing who are the maker and the payee, how the debt arose, and the amount due and to grow due on the mortgage, *held* a substantial compliance with Chattel Mortgage Act N. J. § 4.

4. **Chattel mortgages ⬥═63—Affidavit as to consideration held not false.**

   Mortgagee's affidavit attached to chattel mortgage under Chattel Mortgage Act N. J. § 4, in stating as part of the consideration that mortgagor shall engage mortgagee as its general manager, without compensation, to supervise the conduct of its business, subject to the direction of its proper officers, and that he shall be "general manager and countersign checks of the company," *held* not false, though mortgagee was only to countersign checks; the words "and countersign checks" not indicating he was to do something additional to the duties of general manager in the broad sense, but being merely explanatory of and limiting his duties.

⬥═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petitions to Revise an Order of the District Court of the United States for the District of New Jersey, in Bankruptcy; John Rellstab, Judge.

In the matter of the estate of the McCullough Trucking Company, bankrupt; Samuel Milberg, trustee. On petition of the trustee, the referee declared null and void, as against the trustee, two chattel mortgages of bankrupt to William McCullough. The District Court on petition for review reversed the referee's order as to one of the mortgages and affirmed it as to the other, and the trustee and William McCullough each petition for revision. Order of District Court affirmed.

Gross & Gross and Benjamin Gross, all of Jersey City, N. J., for trustee.

Jerome J. Dunn, of Jersey City, N. J., for McCullough.

Before BUFFINGTON and DAVIS, Circuit Judges, and McKEEHAN, District Judge.

DAVIS, Circuit Judge. On August 9, 1922, the McCullough Trucking Company was adjudicated a bankrupt, and Samuel Milberg was appointed trustee in bankruptcy. The assets of the bankrupt estate were incumbered by two chattel mortgages, executed by the bankrupt to William McCullough. The first mortgage for $95,500 was dated September 23, 1920, and the second for $4,000 was dated March 10, 1922.

There is no question but that the money mentioned in the mortgages as the consideration was advanced by the mortgagee to the bankrupt. The question is whether or not the affidavits attached to the mortgages comply with the requirements of the Chattel Mortgage Act of New Jersey. Section 4 of that act provides that—

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder of said mortgage, his agent, or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon." 1 Compiled Statutes of New Jersey, p. 463.

[1] The rule formerly prevailing in the courts of New Jersey was that strict technical compliance with this statute was absolutely necessary. Graham Button Co. v. Spielmann, 50 N. J. Eq. 120, 24 Atl. 571; Spielmann v. Knowles, 50 N. J. Eq. 796, 27 Atl. 1033. But the present rule is that, in the absence of fraud, substantial compliance only is required. The "consideration" which the mortgagee must fully and truthfully state is the consideration actually received by the mortgagor. If the affidavit in some way shows this consideration and how it came into existence, the mortgage will not be set aside because the affidavit is inartificially drawn. Hunt v. Ludwig, 93 N. J. Eq. 314, 116 Atl. 699; American Soda Fountain Co. v. William E. Stolzenbach, 75

N. J. Law, 721, 68 Atl. 1078, 16 L. R. A. (N. S.) 703, 127 Am. St. Rep. 822; Howell v. Stone & Downey, 75 N. J. Eq. 289, 292, 71 Atl. 914; Simpson v. Anderson, 75 N. J. Eq. 581, 73 Atl. 493; Breit v. Solferino, 77 N. J. Law, 436, 72 Atl. 79; Shupe v. Taggart, 93 N. J. Law, 123, 107 Atl. 50. Any substantial deviation from the truth, however, will invalidate the mortgage. Collerd v. Tully, 78 N. J. Eq. 557, 560, 80 Atl. 491, Ann. Cas. 1912C, 78; In re Novelty Webb Co., 236 Fed. 501, 149 C. C. A. 553; McCullough v. McCrea (C. C. A.) 287 Fed. 342.

[2, 3] The following affidavit was annexed to the first mortgage:

"William McCullough the mortgagee in the foregoing mortgage named being duly sworn on his oath says that the true consideration of the said mortgage is as follows, viz.: 68 promissory notes, containing three series, first series shall include 12 notes of $1,000.00 each interest 6 per cent., second series shall include 55 notes at $1,500.00 each interest 6 per cent., and the third series shall include 1 note at $1,000.00 interest 6 per cent., making a total of $95,500.00, and deponent further says that there is due on said mortgage the sum of ninety-five thousand five hundred dollars besides lawful interest thereon from the fourth day of October, 1920."

The affidavit states neither the maker nor the payee of the notes. It does not disclose whose promissory notes were secured by the mortgage nor the nature of the obligation for which they were given. It is so defective that it cannot in any sense be said to be a substantial compliance with the requirements of the statute. The order declaring this mortgage null and void as to the trustee in bankruptcy is affirmed.

The following affidavit was annexed to the second mortgage:

"Will J. McCullough, the mortgagee in the foregoing mortgage named, being duly sworn, upon his oath deposes and says that he is the owner and holder of the said foregoing chattel mortgage, and that the true consideration of said mortgage consists of a promissory note in the sum of $4,000.00, bearing interest at the rate of 6 per cent. for a period of four months from the date hereof, and that said promissory note was given to affiant by the McCullough Trucking Company of New Jersey in consideration of the sum of $4,000.00 given by affiant to the said McCullough Trucking Company and also in consideration that the mortgagor shall engage affiant as its general manager, without compensation, to supervise the conduct of the business of the mortgagor, subject to the direction of the proper officers of the company, as provided for by the by-laws of the company. Affiant shall be the general manager and shall countersign checks of the company upon its checks account in addition to the signature now required on said company checks.

"The employment of affiant by the mortgagor shall cease and determine at the expiration of four (4) months from the date hereof, or as soon prior or subsequent thereto as aforesaid sum of $4.000.00 with interest thereon, shall be repaid to affiant by the mortgagor.

"Affiant further says that there is still due on said mortgage the sum of $4,000.00 besides lawful interest to be due thereon from the day and year of this indenture of chattel mortgage."

While this affidavit is by no means a model, it does show who the maker and payee of the notes are, how the debt arose, the amount due and to grow due thereon.

[4] It is urged by the trustee that the portion of the affidavit referring to the affiant's acting as general manager of the company without compensation was not part of the consideration and, as stated by affiant under cross-examination, he was not to act as general manager. Con-

sequently the affidavit was false. This may be true if by the words "general manager" is meant one who supervises and is responsible for the conduct of the business, but it seems to us that the purpose of the arrangement between the mortgagor and mortgagee was to give the mortgagee, whose money was being spent in carrying on the business, a check on the bank account of the mortgagor. All checks had to be countersigned by him, and this fact gave him an opportunity to know what the money he loaned was being spent for. He was in a position to exercise a supervision over the bank account. The affidavit provided that the affiant shall be "general manager and shall countersign checks of the company." The words "and shall countersign check of the company" are not something additional to his duties as general manager, but are explanatory of his duties. This was what he wanted to do. These were his duties within the limited definition of "general manager" which the affidavit and the testimony show that the mortgagor and mortgagee had in mind. These duties no one denied the mortgagee performed. And so the affidavit within this definition of "general manager" was not false, but a substantial compliance with the statute.

The order of the District Court holding the mortgage valid is affirmed.