(Decided 12th February, 1875.)

---

# John E. Smith, Trustee of Henry Poole, and Wife *vs.* Andrew J. Myers.

*Affidavit of Mortgagee as required by sec. 29 of Art. 24 of the Code— Usury.*

A mortgage was given to secure the payment of a note of the mortgagor to the mortgagee, for $5000. The actual consideration for the note was a loan of $4400, the difference, $600, having been withheld by the mortgagee, by agreement with the mortgagor, as a bonus for the loan. The mortgagee made the usual affidavit that the consideration in the mortgage was true and *bona fide* as therein set forth. The mortgaged property was sold by the mortgagee to enforce the payment of the mortgage debt and interest. Upon exceptions to the ratification of the sale in behalf of the mortgagor and his creditors, it was HELD:

.That the mortgagee in making affidavit to the truth and *bona fides* of the consideration as set forth in the mortgage, was neither in law nor morals guilty of false swearing; and the mortgage·was valid as a security for the amount actually loaned with legal interest thereon.

Where upon default in the payment of interest on a note secured by mortgage, the mortgagee in accordance with the provisions of the mortgage, sells the mortgaged property, it cannot be urged as a valid objection to the ratification of the sale, that there was no default in the payment of the interest, upon the ground that if the sum retained as a bonus by the mortgagee at the time of the loan, had been applied to the payment of the legal interest upon the sum actually advanced, there would have been no interest in arrear. Usury cannot be taken advantage of in this way.

In determining whether there has been a default, the Court must be governed by the terms of the mortgage itself, irrespective of the question of usury. After a default thus made, a sale, or its ratification can be prevented on this · ground only by paying, or at least offering to pay the sum actually loaned with legal interest.

APPEAL from the Circuit Court for Carroll County, in Equity.

On the 1st of March, 1871, Henry Poole and wife, and Naomi Poole, executed to Andrew J. Myers a mortgage to secure the payment of $5000, alleged to be due to the said Myers by the said Henry on his promissory note of the same date, payable three years after date, with interest thereon, to be paid semi-annually. The mortgage contained a power authorizing the mortgagee to sell in default of any of its conditions. The mortgagee made affidavit in the usual form "that the consideration in said mortgage was true and *bona fide* as therein set forth." On the 29th of March, 1873, Henry Poole executed a deed conveying all his property to John E. Smith, Esq., in trust, to sell the same, and apply the proceeds to pay the debts of the grantor according to their legal priorities, without preference, and the balance if any to the grantor. The trustee gave bond as required by law. On the 8th of April, 1873, proceedings were commenced by the mortgagee to enforce

the payment of his mortgage debt and interest. The sale took place on the 8th of May, 1873, and was duly reported to the Court, the mortgagee being the purchaser. Smith, the trustee, representing the grantor and his creditors, filed numerous exceptions to the ratification of the sale; the following were the most material:

1st. That the consideration set forth in the mortgage was false, and the affidavit of the mortgagee thereto, as to the truth and *bona fides* of such consideration, was false.

2nd. Because at the time of the execution of the mortgage, Henry Poole was not indebted to Myers, the mortgagee, in the sum of five thousand dollars, as set forth and alleged therein, and as sworn to by the mortgagee, but only, if at all, in the sum of four thousand four hundred dollars.

3rd. Because of usurious charges.

4th. That at the time of the institution of the proceedings in this cause, under which said lands and premises were sold, there had been no default in any of the conditions of the mortgage.

The mortgagor, produced as a witness by the exceptant, testified that Myers told him he "would have to pay him a bonus on the money at the start." I asked him "how much *bonus* he would charge me, and he said $600; he said he would give me $4400 and take a mortgage for $5000, and then he would never charge more than six per cent. on the $5000." The witness further stated "$4400 was received by me, and that with the $600 charged as bonus by Myers, made up the consideration of the mortgage." Mr. Roberts, who prepared the mortgage at the request of both parties, and from instructions given by Myers in the presence of Poole, testified that "he learned from the conversation between them at the time, that the loan was for $5000, at ten per cent., the principal sum to be paid within three years; that when in a few days afterwards he received from Myers a check for $4277, which he

applied in discharge of sundry claims against Poole, he did not exactly understand the amount, and when Poole called on him, he informed him of the receipt of the check; he explained that it was all right; that the $4277, and the premium of his 'life insurance' (which was payable to Myers,) would make up the $4400, and the excess of six per cent. added, would make up the $5000." Mrs. Poole testified that the agreement between her husband and Myers, which she heard made before the mortgage was drawn, was that the mortgage was to be for $5000; that her husband was to get $4400, and $600 was to be a bonus to Mr. Myers.

On the 18th of December, 1873, the Court, (MILLER and HAYDEN, J.,) passed an order overruling the exceptions, and ratifying and confirming the sale, and referring the cause to the auditor to state an account distributing the proceeds of sale. The auditor was directed in stating the account to state the claim under the mortgage as consisting of the principal of $4400, with legal interest thereon from the date of the mortgage, and to apply the proceeds accordingly. The residue of the proceeds after payment of the mortgage claim and costs, &c., was to be audited to the trustee under the deed of trust, for the benefit of the creditors of Poole, &c.

From this order the trustee appealed.

The cause was submitted on briefs to BARTOL, C. J., STEWART, BRENT, GRASON and ALVEY, J.

*William A. McKellipp* and *John E. Smith*, for the appellant.

The consideration in the mortgage in this case, by clear and positive proof is $4400; the consideration alleged and sworn to, is $5000. The affidavit then is manifestly false. There is one consideration alleged—there is a different one in fact. *Denton and Wife vs. Griffith*, 17 *Md.*, 304.

An affidavit is absolutely essential to the validity of a mortgage, except as between the parties thereto, and its absence avoids the instrument as to all persons except the grantor. "It was designed not merely for the prevention of fraud, but for the benefit of creditors who may claim against such an instrument as void in law, under the Act, however, the question of actual fraud may stand." *Cockey vs. Milne's Lessee,* 16 *Md.,* 207.

One of the rules for the interpretation of statutes, as laid down by the Barons of the Exchequer, in *Heyden's Case,* (3 *Rep.,* 7,) and cited in 38 *Md.,* 65 and 66, and approved, is, that it is the duty of Judges, at all times, to make such construction as should suppress the mischief, and advance the remedy ; putting down all subtle inventions and evasions for the continuance of the mischief, *et pro privato commodo,* and adding force and life to the cure and remedy, according to the true intent of the makers of the Act "*pro bono publico.*" *Dwarris on Stats.,* 695.

The question involved does not arise on the provisions of the Code relating to usury, but is wholly independent of it, and involves the construction of sec. 29 of Art. 24 of the Code, as to the necessity of an affidavit, and the effect on a mortgage *as such,* of a false affidavit to the truth and *bona fides* of the consideration.

In fact, this affidavit is endorsed on this mortgage, and there is, therefore, a *literal* compliance with the statute. The points presented by the appeal then, are : "Will a Court of Equity, abhorring fraud and all subtleties and devices, and using, with the utmost scrutiny, every means to discover and circumvent and expose them, and to defeat them in their purposes, enforce and uphold a mortgage *as such,* against creditors of the mortgagor, where the statute has been literally complied with, but where the affidavit being false, such compliance is the result and work of perjury ; and did the Legislature intend, by the enactment of this statute, whose purpose and object are so obviously to

prevent wrong and promote right and fair dealing among men, that if the mortgagee should make such affidavit falsely, yet the mortgage should stand and be valid, and the mortgagee be left to criminal prosecution for perjury, but with full and unimpaired power and right to avail himself of the instrument as a valid security and lien, to the same extent that he could do if the affidavit had been true?"

No such intent can be justly or fairly attributed to the law-making power. They did not, surely, mean that this affidavit should be simply correct in form, and a mere matter of form stripped of existence, but they evidently did mean, judging from the evils attempted to be remedied, and the wrongs to be prevented, that it should be wrong in point of fact.

The intent of the Legislature was to have a truthful affidavit, and to that end to purge the conscience of the mortgagee, and to fix a character and a quality to the mortgage, just as the affidavit was true or false, establishing it in its integrity in the one case, avoiding and nullifying it in the other. An affidavit falsely made, is, in contemplation of law, no affidavit, it confers and establishes no rights, and is as if it had never been made. If no affidavit had been made in this case, the mortgage would be void. Can it be maintained that a man can place himself in a better condition by a false oath, than by no oath at all?

*James Revell*, for the appellee.

Was the consideration in the mortgage false, and was the affidavit of the truth and *bona fides* of the consideration false?

The consideration in the mortgage was, that "Henry Poole, *by his promissory note* of even date herewith, stands indebted unto the mortgagee, Andrew J. Myers, in the sum of $5000.00, payable," &c., &c. This amount was the veritable indebtment established between the parties

by a contract *previously* made; a contract which they had a right to make, untainted by any stain of wrong.

The promissory note was the consideration, and neither the consideration nor the affidavit was false. And although the evidence discloses that only $4400.00 were received under the contract upon which the promissory note was based, and although Courts will unmask the contract, where usury is pleaded, to unfold its true nature, yet the usury laws do not *annul* the contract but only *eliminate* the usurious interest, and there is nothing in section 29 of Art. 24, which by any fair, reasonable or honest interpretation would render this mortgage in anywise inoperative.

The objection that the charges were usurious, and that therefore the sale should be annulled is untenable. The exaction of usurious interest does not invalidate the mortgage or affect the power of sale. *Powell & Harrison vs. Hopkins,* 38 *Md.,* 1; *Walker vs. Cockey, et al.,* 38 *Md.,* 75; *Horsey vs. Hough,* 38 *Md.,* 130.

There is no force in the objection of the appellant that when the proceedings were instituted there had been no default.

1st. Because any usurious interest could be recovered at law; and if the $600 had been actually paid, there was a complete remedy at law to recover back this amount.

2nd. Because one of the conditions of the loan was the payment of interest semi-annually. And inasmuch as the exaction of usurious interest did not invalidate the mortgage, and the mortgage was good for at least the amount of $4400.00, it follows according to its terms, there was interest due semi-annually on this amount, which it is not pretended was ever paid or offered to be paid. Had the mortgagor made the payment of the semi-annual interest on the last amount, or tendered payment as the interest instalment became due, there might have been force in the objection. But default had been made four times. The mortgagee was entitled to his interest semi-annually on

Smith, Trustee, *vs.* Myers.

the $4400. It was the mortgagor's duty to pay it, and failing to do so, the conditions were violated and the power to sell established.

BRENT, J., delivered the opinion of the Court.

The record in this case is so very limited, that we have been somewhat embarrassed in our examination of the questions presented. It contains nothing but the short docket entries, and the opinion and decree of the Court below. We refer to this, that we may express our disapproval. The record ought certainly to contain such of the original papers as are necessary to present the case with sufficient fulness.

As it is, we are restricted to the opinion of the Court to learn anything of the facts and proceedings in the case. This to say the least, is irregular, but we have concluded to entertain the appeal, although we might well dismiss it upon the ground of an incomplete and imperfect record.

The case has been submitted upon printed arguments, and there are but two errors, assigned on the part of the appellant, in the views of the Court. The first is in regard to the affidavit to the mortgage, the present contest arising between creditors and the mortgagee. The appellant contends that the affidavit was not made by the mortgagee in good faith, and that it is untrue in fact. The Court below decided otherwise, and in this the appellant alleges there is error.

The Code, in *Art.* 24, *sec.* 29, provides, "that no mortgage shall be valid, except as between the parties thereto, unless there be endorsed thereon an oath or affidavit of the mortgagee, that the consideration in the mortgage is true and *bona fide* as therein set forth." The affidavit in this case is formal and the consideration *set forth* in the mortgage is a note for five thousand dollars. In fact the true amount loaned is but $4400, the residue of $600 being usurious or withheld as a bonus. It is therefore

argued that the affidavit is false and void, and the mortgage is to be treated as one without an affidavit endorsed upon it.

The consideration expressed in the mortgage is the indebtedness of the mortgagor *on and by his note* for five thousand dollars, and to the truth and good faith of that consideration as set out the affidavit has reference. From the facts stated in the Court's opinion it is apparent, that the note truly represents the contract made between the parties, at the time of its execution, and that it was in good faith intended by them to express the debt which was to be paid. It was not designed as *a deceit,* and there is nothing to show that any fraud was practised in obtaining it. Nor was there any fraud upon creditors intended or contemplated. On the contrary the amount of money loaned was obtained for the purpose of meeting the demands of pressing debts, and was actually applied to their payment. This being so, it cannot be said that the mortgagee, Myers, either in law or morals was guilty of false swearing, when he made the affidavit that the consideration, set forth in the mortgage, was true, and that it had been given and received in good faith. As was said by the Court below, there is nothing *immoral* in the contract, and it could be enforced to its utmost extent, but for the operation of the laws against usury. These do not render the contract void, or make invalid the mortgage given to secure its performance. They only forfeit the excessive or usurious interest, and cannot be said to affect the fact, that the contract between the parties was real and true, and was entered into by both of them in good faith. The Circuit Court seems to have entertained the same view in regard to this affidavit, and we think the conclusion, reached by them, is the correct one.

The other error assigned is, that if the usurious interest taken in advance at the time of the loan, was applied, as it should be, to the payment of the legal interest accruing

upon the sum which was really advanced by the appellee, there was no default in any of the conditions of the mortgage. This question has not been discussed in the argument submitted on the part of the appellant, and we are without information of the grounds upon which he rests his objection to this part of the Court's opinion. Whether the objection is true or not in the fact assumed, we cannot ascertain from this record. But the Court below has treated it upon the assumption that it is so, and we shall so regard it. We cannot better express our views upon this point than in quoting from the language used by the Court. They say in their opinion, "but it is said that by application of the $600, retained as bonus, to the accruing interest on $4400, there would have been no default in payment of interest on the sum actually loaned, and it is contended the Court should make this application. No authority has been cited for this position, and we think none can be found. Excessive interest, when once paid, may be recovered back by an action at law brought in due time, or in equity it may be eliminated from the claim upon the objection of other claimants whose rights its allowance would injuriously affect; but we know of no case in which it has been decided that usury could be taken advantage of in the mode now contended for. In determining whether there has been a default, the Court must be governed by the terms of the mortgage itself, irrespective of the question of usury. After a default thus made, a sale or its ratification can be prevented on this ground only by paying, or at least offering to pay, the sum actually loaned, with legal interest. If this exceptant, or the creditors whom he represents had accompanied their objection with payment into Court, or tender of payment of $4400, with legal interest thereon up to the time of sale, a very different case would have been presented, but as it now stands, we cannot sustain this objection." This expresses our own views, and we fully concur in the reason-

ing as well as the conclusion reached by the Circuit Court upon this point.

Upon the other branches of the case, the correctness of the Court's conclusions is manifest. They have not been commented upon, or referred to in the argument on the part of the appellant, and as no error has been suggested in regard to them, it is unnecessary to do more than to say we concur upon them with the Court below.

Finding no error in the opinion, the decree which has been passed by the Court below will be affirmed.

*Decree affirmed.*

(Decided 12th February, 1875.)