PAGENHARDT, Assignee *v.* WALSH, Trustee

[No. 112, September Term, 1967.]

*Decided June 28, 1968.*

*Motion for rehearing filed September 6, 1968; denied and opinion modified September 23, 1968.*

334

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*William H. Geppert* and *Hugh A. McMullen,* with whom were *Gunter & Geppert* on the brief, for appellant.

*Theodore C. Waters, Jr.,* with whom were *Miles & Stockbridge* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

On 23 October 1964, McIntyre's Bakery, Inc. (the Bakery) of Westernport, Maryland, borrowed $60,000 from The Garrett National Bank of Oakland, Oakland, Maryland (the Bank). The loan was secured by a mortgage on four parcels of land, located in Westernport and owned by the Bakery.

On the day when the mortgage was executed, David G. McIntyre and William R. Burkett, who were, respectively, the president and secretary of the Bakery, went to the office of Wesley Schaible, the executive vice president and cashier of the Bank. Prior to the signing of the mortgage, Schaible requested Howard Rex Teagarden, a notary public, to join the group in order to be present when the mortgage was executed. McIntyre signed the mortgage as president of the Bakery and Burkett signed as secretary and affixed the Bakery's corporate seal. Schaible then dated the mortgage and entered the date in the form of affidavit of consideration, which was a part of the mortgage. Teagarden, who was a notary public, took McIntyre's acknowledgment and asked Schaible whether the consideration of $60,000 was true and bona fide, and Schaible answered that it was. Teagarden then completed the form of acknowledgment and the affidavit of consideration, which were combined in a single paragraph, by signing his name and affixing his notarial seal. Teagarden did not, however, insert Schaible's name in the affidavit of consideration, "thinking that it would be typed in by the attorney" who would record the mortgage.

The Bakery then received cashier's checks totalling $60,000 which were used to pay creditors.

Thereafter, the Bakery defaulted in its mortgage payments; the mortgage was assigned to the appellant, Pagenhardt, as

trustee for purposes of foreclosure; on 8 February 1966, Pagenhardt instituted foreclosure proceedings; on 24 February 1966, bankruptcy proceedings were instituted against the Bakery; and on 11 March 1966, the mortgaged property was sold to the Bank for $63,000. On 14 March, the Bakery was adjudicated a bankrupt and on 7 April 1966, the appellee Walsh was appointed its trustee in bankruptcy. On 15 April, Walsh intervened in the foreclosure proceedings, and filed exceptions to the sale; and on 17 March 1967, the court below entered a decree holding the mortgage invalid, setting aside the foreclosure sale, and holding title to the mortgaged premises vested in the trustee in bankruptcy. It was from this decree that the present appeal was taken.

The appellant bases his appeal on two contentions:

i. The mortgage constitutes an equitable lien on the mortgaged property superior to the liens of subsequent creditors;

ii. The mortgage was valid.

The trustee in bankruptcy, relying on the provisions of Maryland Code (1957) Art. 21, § 30 (the Act):

> "No mortgage or deed of trust shall be valid except as between the parties thereto, unless there be endorsed thereon an oath or affirmation of the mortgagee or the party secured by a deed of trust that the consideration recited in said mortgage or deed of trust is true and bona fide as therein set forth."

urges that the omission from the affidavit of consideration of the name of the affiant, Schaible, makes the mortgage invalid as to subsequent creditors without actual notice, in whose shoes he stands. We shall first consider the validity of the mortgage.

Ginsburg, *Mortgages and Other Liens in Maryland* (1936) at 56, states the rule of the Maryland cases:

> "If the affidavit [of consideration] is lacking or if the affidavit is bad, the mortgage will, as a general rule, have no effect except as between the parties. The mortgage is not absolutely void, but will have the effect of an equitable mortgage. As such mortgage, it will yield to the specific lien created by an attachment, even though such attachment is based on a prior existing debt. But it will be good against a judgment creditor who acquires such judgment subsequent to the mortgage but on a prior debt."

As Judge Soper, speaking for the Fourth Circuit, said in *Sandler v. Freeny*, 120 F. 2d 881 (1941) in a case where Maryland law was controlling:

> "It is clearly established that while the omission of the affidavit of consideration is fatal to the validity of the mortgage as to subsequent creditors without actual notice, the purpose of the statute is fulfilled if it is substantially rather than literally complied with." 120 F. 2d 883.

Our predecessors stated the proposition somewhat differently in *Marlow v. McCubbin*, 40 Md. 132 (1874) at 137:

> "This court has frequently declared it was the purpose of this statutory provision to prevent fraudulent transfers of property upon false or pretended considerations, and not only thus to protect creditors against frauds, but also to enable them to claim against such instruments when executed without the required affidavit as void *in law*, no matter how the question of *actual fraud* may stand. *Cockey v. Milne*, 16 Md. 200, 207. But it has never been decided that there must be an *exact* and *literal* following or incorporation of the *words* of the statute in the affidavit or otherwise it will be insufficient. On the contrary a substantial compliance, a compliance which meets and subserves the purpose and design of the Act is all that the law requires."

The question which we must resolve is whether the omission of Schaible's name in what would otherwise have been a valid affidavit is equivalent to the omission of the affidavit, which would invalidate the mortgage, or whether the affidavit with the name omitted can be characterized as substantial, if not literal, compliance with the statute. The answer, if it is to be found, must be found in the prior decisions of this Court.

Mortgages to which no affidavit of consideration was attached were held invalid in *Cockey v. Milne*, 16 Md. 200 (1860); and in *Pleasanton v. Johnson*, 91 Md. 673, 47 A. 1025 (1900). *See also Johnston v. Canby*, 29 Md. 211 (1868). In *Dyson v. Simmons*, 48 Md. 207 (1878) the borrowers mortgaged land in Montgomery County, but their acknowledgments, and the affidavit of consideration, were taken by a justice of the peace in Frederick County. The mortgage was recorded without first obtaining a clerk's certificate as then required by law, and our predecessors held the mortgage invalid as to subsequent creditors. *See also, Reiff v. Eshleman*, 52 Md. 582, 588 (1879)

where the same result would have been reached on almost identical facts had the subsequent mortgagees not had actual notice of the defective mortgage. For a case in which the affidavit was attached, but where the morgage was held invalid because the consideration was not truthfully stated, see *Denton v. Griffith,* 17 Md. 301 (1861), where a bill of sale purported to transfer chattels for a consideration of $1,500 while an affidavit attached to the bill of sale said that the grantor was indebted to the grantees in the amount of $1,500. In *Ressmeyer v. Norwood,* 117 Md. 320, 83 A. 347 (1912) a mortgage was given by a man to his wife. The consideration stated both in the mortgage and the affidavit was an obligation alleged to be owed by the husband to the wife. In fact, no such obligation existed, and the mortgage was held invalid. In *Groh v. Cohen,* 158 Md. 638, 149 A. 459 (1930) where the consideration stated in the affidavit was entirely fictitious, the mortgages were held invalid; and the same result was reached on similar facts in *Kline v. Inland Rubber Corp.,* 194 Md. 122, 69 A. 2d 774 (1949). In *Jackson v. County Trust Co.,* 176 Md. 505, 6 A. 2d 380 (1939) an affidavit made by "George E. Rullman, Attorney named in the foregoing mortgage" was held not to comply with the Code requirement (now Art. 21, § 31) that an agent of the mortgagee make a further affidavit respecting his agency. *Milholland v. Tiffany,* 64 Md. 455, 2 A. 831 (1886) reached the same result when the agency was recited by the officer who took the affidavit but not sworn to by the agent.

On the other hand, substantial compliance with the provisions of the Act has been regarded as sufficient where the transaction was entered into in good faith, but where there was an inadvertent or careless disregard of fact. Examples of this can be found in *Marlow v. McCubbin, supra,* where the affidavit stated that the consideration was "bona fide" and not "true and bona fide" as required by statute; in *Comegys v. Clarke,* 44 Md. 108 (1876) where the affidavit stated that the consideration was an advance of $2,000 by the mortgagee to the wife who executed the mortgage, when the advance had actually been made to her husband by the mortgagee; in *Smith v. Myers,* 41 Md. 425 (1875), where the mortgage was given to secure a note of $5,000, and the affidavit so stated, when in fact the amount loaned was $4,400, the difference of $600 being regarded as a bonus by the mortgagee; in *Buck v. Gladfelter,* 122 Md. 34, 89 A. 317 (1913), where the affidavit was made by Charles D. Fenhagen, not further identified, who was later permitted to testify that he "was the secretary and treasurer of the mortgagee and made the affidavit as such officer and not in his individual capacity" thus bringing the affidavit within the Code provision

(now Art. 21, § 31) permitting the affidavit to be made by an officer of a corporation; in *Govane Bldg. Co. v. Sun Mortgage Co.,* 156 Md. 401, 144 A. 486 (1929) where the mortgage and the affidavit recited a loan of $5,000, which the mortgagor expected to repay, although the amount he received was less; and in *Sandler v. Freeny, supra,* where the mortgage recited that it was a purchase money mortgage, and this representation was adopted by the affidavit, when in actuality only a portion of the loan was used to purchase the property. *Smith v. Myers, supra,* and *Govane Bldg. Co. v. Sun Mortgage Co., supra,* should be compared with *Plitt v. Stevan,* 223 Md. 178, 162 A. 2d 762 (1960) where a contrary result was reached on a similar, but a more extreme variance between the recited consideration and the true consideration.

From our review of the Maryland cases, we come to the reluctant but inevitable conclusion that the result reached by the lower court was correct on this point: reluctant, because there is not in this case any suggestion of a fraudulent transfer for a pretended consideration which the Act was intended to prevent; and inevitable, because the earlier cases leave us no alternative. Our prior decisions would seem to indicate that the doctrine of substantial compliance may be readily applied to the *content* of the affidavit of consideration. *Marlow v. McCubbin, supra; Comegys v. Clarke, supra.* However, strict and literal standards are to be applied to the *form* of the affidavit. *Dyson v. Simmons, supra; Reiff v. Eshleman, supra,* which holds that the making of the oath cannot be the subject of parol proof; *Jackson v. County Trust Co., supra.* The distinction can be rationalized by recalling that the paramount purpose of the affidavit was to protect creditors of the mortgagor against his fraud, and that an ·inaccurate description of the consideration, if innocently made, is as effective in putting a creditor on notice as a correct recital would be. An affidavit deficient in form, however, like a defective mortgage, except as between the parties, or as to those having actual notice, is regarded by the Maryland cases as a nullity, since it creates no valid lien and cannot be regarded as having put subsequent creditors on constructive notice.

Turning now to the appellant's first point, we intend to reaffirm the rule of *Sixth Ward Building Association v. Willson,* 41 Md. 506 (1875); *Dyson v. Simmons, supra;* and *Plitt v. Stevan, supra,* that a defective mortgage will be enforced between the parties as an equitable lien, and will prevail over the claims of creditors who extended credit prior to the date of the mortgage, even although the claims of such creditors are reduced to judgment after the date of the mortgage. The lien of a defective mortgage is subordinate, however, to the claims of

creditors who extended credit subsequent to the date of the mortgage, without actual knowledge of the existence of the mortgage.

To the extent that *Jackson v. County Trust Co., supra,* may appear to hold to the contrary, it must either be distinguished or overruled. In *Jackson,* which held the lien of a defective mortgage superior to the claim of a creditor without actual notice, an examination of the record shows that the creditor's claim had its inception prior to the mortgage, and that the obligation which he was attempting to enforce was a renewal of the antecedent debt.

In seeking to uphold the chancellor's decree which held the mortgage invalid, set aside the foreclosure sale and declared title to the mortgaged premises to be vested in the trustee, the trustee relies on Bankruptcy Act § 70(c), 11 USCA § 110(c) (the "strong arm" clause of the Bankruptcy Act), which provided, prior to an amendment on 5 July 1966:

> "The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." [1]

---

1. As amended, § 70(c) now reads, in part:

" * * * The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists; (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into the possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. *If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee.* * * * " (emphasis supplied).

The last sentence was intended to clarify and not alter the

In support of this contention, the trustee cites *Davis v. Harlow,* 130 Md. 165, 100 A. 102 (1917) which held that title to property subject to a defective mortgage should be vested in the trustee in bankruptcy. But *Davis v. Harlow,* like *In re Noel,* 137 F. 694 (D. Md. 1905), involved foreclosure proceedings which were commenced *after* the filing of the petition in bankruptcy. In the case before us the proceeding had been instituted *before* the filing of the petition and sale had been made before the adjudication, although the sale had not then been ratified. Bankruptcy courts are reluctant to stay proceedings instituted in state courts prior to the filing of the petition which have as their purpose the enforcement of a valid lien created more than four months prior to the bankruptcy. Collier, *Bankruptcy* (14th Ed., 1967) § 2.63 [1] at 356; *Straton v. New,* 283 U. S. 318 (1931).

It is our view that the case before us is controlled, at least obliquely, by *Wethered v. Alban Tractor Co.,* 224 Md. 408, 168 A. 2d 358, *cert. den.* 368 U. S. 830 (1961). *Alban Tractor* involved an effort by a trustee in bankruptcy acting under § 70(e) of the Bankruptcy Act, 11 USCA § 110(e) to recover, for the benefit of the bankrupt estate, the proceeds of a sale made under the foreclosure of an unrecorded chattel mortgage. Judge (now Chief Judge) Hammond, who filed a carefully considered opinion of this Court, pointed out that a chattel mortgage, given in the ordinary course of business, in good faith and for value, although unrecorded, was valid and enforceable in a court of equity as a lien valid between the parties and against creditors except those protected under Code Art. 21 § 41; that in Maryland, while legal title does not vest in the purchaser at a foreclosure sale until the price is paid and the deed is delivered, but when delivered, the deed vests title in the purchaser from the day of sale, citing *Union Trust Co. v. Biggs,* 153 Md. 50, 56, 137 A. 509, 512 (1927); that under § 70(c) of the Bankruptcy Act, *supra,* the trustee succeeds to rights of

rights conferred upon the trustee in bankruptcy by § 70(c), Collier, Bankrupcty, (14th Ed., 1967) § 70.65, at 734.

"If a security transaction or other transfer involving a debtor's property is valid in part against creditors whose rights and powers are conferred upon the trustee by the proposed amendment, it seems clear that it should be valid to the same extent against the trustee. While nothing in the proposed or existing legislation empowers the trustee to invade interests that no creditor described in the new version of the 'strong-arm' clause could have reached, it has been thought advisable not to leave this limitation in the realm of inference." House Report No. 686, 89th Congress, 1st Session (1965); Collie , supra, § 70.65 at 734.

creditors as of the date of the bankruptcy, and not as of an anterior point of time, *Lewis v. Manufacturers Nat. Bank,* 364 U. S. 603 (1961) ; and adopted the language used by the court below, which said of § 70(c) : "The Act creates a hypothetical creditor even though no such creditor actually exists, but it has not undertaken hypothetically or otherwise to create property where none exists." 224 Md. at 427.

A problem of the sort now before us is to be resolved under Maryland law. Judge Parker, speaking for the Fourth Circuit, stated the rule :

> "It is elementary that questions as to the validity of a deed of trust on land, the necessity and requisites of registration, and the effect of the failure to record as against creditors, or a trustee in bankruptcy representing creditors, are to be determined by the laws of the state where the land embraced in the deed of trust is situate." *Haas v. Rendleman,* 62 F. 2d 701 (4th Cir.), cert. den. 289 U. S. 750 (1933) *Accord: Sapero v. Neiswender,* 23 F. 2d 403, 404 (4th Cir. 1928) ; *In re Noel, supra.*

The Bakery's mortgage, although defective in form, was valid between the parties and was enforceable by the Bank as an equitable lien. The inadequacy of the affidavit was not a defense available to the Bakery in the foreclosure proceeding brought by the Bank. The foreclosure proceeding, instituted prior to the filing of the petition in bankruptcy, had as its purpose the enforcement of the valid equitable lien held by the Bank, which was paramount to the claims of creditors of the Bakery who had extended credit prior to the date of the mortgage and as to them was valid to the full amount of the mortgage debt. The Bank's lien was subordinate, however, to the claims of creditors who had extended credit subsequent to the date of the mortgage, without actual knowledge of its existence. The sale, made prior to the adjudication, was a valid one, and should have been left undisturbed, although the trustee, under the Maryland cases, could assert a claim against the proceeds or a lien against the property in behalf of subsequent creditors without knowledge.

For the reasons stated, we will reverse the decree and remand the case for the entry of a decree ratifying the sale, but holding that from the proceeds of sale of the property in the hands of the assignee, there shall be paid to the trustee in bankruptcy a sum equivalent to the aggregate amount owed those creditors of the Bakery who extended credit subsequent to 23 October 1964 (the date of the mortgage) and prior to 14 March

1966 (the date of the adjudication), without actual knowledge of the existence of the mortgage. *Plitt v. Stevan, supra,* 223 Md. at 184. In so holding, we are not unmindful of the result reached in *In re Leven,* 42 F. Supp. 484 (D. Md. 1941) where the question of an equitable lien was neither raised nor considered. To paraphrase the language of § 70(c), as amended, since the mortgage was valid as to all other creditors, it is valid to a like extent against the trustee.

> *Decree reversed; case remanded for entry of a decree in conformity herewith; costs to be paid by appellant.*