4 A.3d 934

AMERIQUEST MORTGAGE COMPANY

v.

PARAMOUNT MORTGAGE SERVICES, INC.

No. 52, Sept. Term, 2009.

Court of Appeals of Maryland.

Aug. 31, 2010.

Reconsideration Denied Oct. 19, 2010.

Daniel J. Tobin (Jenelle M. Dennis and Katherine M. Noonan of Ballard Spahr Andrews & Ingersoll, LLP of Bethesda, MD), on brief, for Petitioner.

Charles F. (Rick) Obrecht, Jr. (Obrecht and Obrecht of Severna Park, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

On October 23, 2006, in the Circuit Court for Calvert County, Paramount Mortgage Services, Inc. (Paramount), Respondent, filed a "COMPLAINT FOR DECLARATORY JUDGMENT TO HAVE [A] PURPORTED DEED OF TRUST [THAT HAD BEEN RECORDED BY AMERIQUEST MORTGAGE COMPANY (AMERIQUEST), PETITIONER, ON APRIL 13, 2005] DECLARED VOID, OR TO ESTABLISH THAT [RESPONDENT'S] DEED OF TRUST [RECORDED ON APRIL 15, 2005] HAS PRIORITY OVER [PETITIONER'S] PURPORTED DEED OF TRUST, AND FOR OTHER RELIEF." The Circuit Court rejected Petitioner's argument that Respondent's action was barred by the

"Curative Act" codified in Section 4–109 of the Real Property Article (R.P.), and **"ORDERED,** that the Deed of Trust, in which . . . Ameriquest Mortgage Company is the Lender, dated March 24, 2003, and recorded in the land records [on April 13, 2005] at 2448/669, is null and void, and did not convey any interest . . . to Ameriquest Mortgage Company[.]" Petitioner noted an appeal to the Court of Special Appeals, and in a reported opinion filed on February 3, 2009, that court affirmed the judgment of the Circuit Court. *Ameriquest v. Paramount,* 184 Md.App. 120, 964 A.2d 279 (2009). Petitioner then filed a Petition for Writ of Certiorari, which presented this Court with the following question:

> In light of Maryland's statutory requirement that a challenge to a recorded deed of trust based on an allegedly improper affidavit of consideration and disbursement must be brought within six months of recordation, may a lienholder challenge an earlier-recorded deed of trust on the basis of an allegedly defective affidavit of consideration and disbursement, if such challenge is not filed until 18 months after recordation?

We granted the petition. 409 Md. 44, 972 A.2d 859 (2009). For the reasons that follow, we agree with the Circuit Court and the Court of Special Appeals that Respondent's complaint was not barred by R.P. § 4–109(b) because the Curative Act does not operate to validate a "fictitious" or "illusory" affidavit of consideration. From our review of the record, however, it is clear that on April 13, 2005, Petitioner was in substantial compliance with the requirements of the Real Property Article. We therefore hold that Petitioner is entitled to a judgment in its favor.[1]

---

1. Because of our conclusion that the affidavit at issue satisfies the substantial compliance standard, and therefore complies with the requirements of R.P. § 4–106, Petitioner is entitled to a judgment in its favor rather than a dismissal pursuant to R.P. § 4–109, and would have been entitled to such a judgment even if Respondent's complaint had been filed within six months of April 13, 2005.

## Background

In its Answer to the Petition for Writ of Certiorari, Respondent "incorporated by reference" the following "pertinent facts and procedural background of this case" as stated by the Court of Special Appeals:

In 1992, Rex Plant acquired title to property at 3650 Yellow Bank Road, Dunkirk, Maryland, in Calvert County (the "Property"). The Property was described as Lot Number Two (2) and Parcel B, containing 0.34 acres. Parcel B is the driveway leading to Yellow Bank Road.

In 2000, Mr. Plant began a romantic relationship with Colleen Bossier, and they lived together on the Property beginning in mid–2000. On or about November 15, 2000, Mr. Plant sold the Property to Ms. Bossier. Pursuant to the sales contract, Ms. Bossier agreed to pay $213,000 to Mr. Plant, including $10,650 in earnest money. No such earnest money was ever paid. To finance her purchase of the Property, Ms. Bossier executed a deed of trust with GreenPoint Mortgage Funding, Inc. ("GreenPoint") to secure a loan in the amount of $202,350. Thereafter, both Ms. Bossier and Mr. Plant tendered mortgage payments to GreenPoint. On January 17, 2001, the deed of trust and property deed were recorded.

In mid–2001, the relationship between Mr. Plant and Ms. Bossier soured, and Ms. Bossier moved out. Pursuant to a recorded Land Installment Contract dated September 26, 2002, Ms. Bossier sold the Property back to Mr. Plant for $200,251.82. That contract provided that Mr. Plant would make payments due on Ms. Bossier's GreenPoint mortgage loan directly to GreenPoint. The contract provided that Mr. Plant could refinance the GreenPoint loan and, upon its payoff, Ms. Bossier would convey the Property to Mr. Plant.

In February 2003, Mr. Plant submitted an application for mortgage financing to Ameriquest, a residential mortgage lender. He stated that he was purchasing the Property from Ms. Bossier. The application contained false information, including fabricated checks, purporting to show that he

had been making direct payments to Ms. Bossier pursuant to a land installment contract. Mr. Plant acknowledged that he never made direct payments to Ms. Bossier. Based upon the information furnished by Mr. Plant, Ameriquest understood that the proceeds from its loan would be used to pay off Ms. Bossier's GreenPoint mortgage. It approved Mr. Plant's application for mortgage financing in the amount of $221,000, which it believed would be sufficient to both pay off the mortgage and cover associated closing costs.

On March 24, 2003, the purported closing took place. At the closing, Mr. Plant executed and delivered a deed of trust granting Ameriquest a security interest in the Property subject to the $221,000 loan. Appended to this deed of trust was an affidavit of consideration and disbursement, which certified, in pertinent part:

> I Hereby Certify, that on this 24 day of March, 2003, before me, the subscriber, A Notary Public of the State of Maryland, in and for the County of Baltimore personally appeared Casey M. Busch the agent of the party secured by the foregoing Deed of Trust ... made oath in due form of law that the consideration resided [*sic*] in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

The deed of trust also provided, in part, that it "secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note...."

Following the closing, Ameriquest learned that the GreenPoint mortgage was significantly more than Mr. Plant had represented, and it cancelled the loan. This decision

was not communicated to Mr. Plant, however, and Mr. Plant remitted at least seven payments to Ameriquest between April 2003 and January 2004, totaling $15,137.98. Green-Point, meanwhile, was not receiving any payments. In early 2004, it decided to foreclose on Ms. Bossier's mortgage. On May 4, 2004, after being contacted by Mr. Plant's lawyer and after reviewing the situation, Ameriquest paid off the GreenPoint mortgage in the amount of $272,625.59, thereby satisfying Ms. Bossier's mortgage debt in full. In so doing, Ameriquest expected to absorb a loss because it agreed to pay off Ms. Bossier's mortgage in return for Mr. Plant's promise to pay $221,000. GreenPoint released its encumbrance on the Property on May 10, 2004.

Ameriquest then negotiated a new agreement with Mr. Plant. An initial letter agreement was signed on July 9, 2004. On September 27, 2004, Mr. Plant and Ameriquest executed a Settlement and Release Agreement ("Settlement Agreement"), which provided that the parties "have agreed to rewrite the loan." Mr. Plant agreed to pay $221,000, the same amount involved in March 2003. A number of the terms, however, were different, including a fixed, rather than variable, rate, no prepayment charge, and no lender or third-party fees and charges. Pursuant to the Settlement Agreement, Mr. Plant, agreed, among other things, to: (i) "Cooperate in a timely manner with regard to providing current income documentation and proof of employment"; (ii) "permit[ ] an independent appraiser to conduct a new appraisal of the property;" (iii) furnish proof that the property taxes were current; and (iv) "[p]rovide a binder evidencing hazard ... insurance coverage on the Property."

In the six weeks following the execution of the Settlement Agreement, Ameriquest investigated the title to the Property, and it tried to communicate with Mr. Plant regarding actions needed to finalize settlement. Although Ameriquest had some initial contact with Mr. Plant's counsel on November 15, 2004, Mr. Plant and his lawyer thereafter ceased responding to Ameriquest's inquiries. According to Ameri-

quest, Plant failed to tender any payments after signing the Settlement Agreement.

In December 2004, Mr. Plant began negotiations with Paramount in an effort to secure additional financing. On February 3, 2005, Paramount conducted the closing of a loan. Because the March 2003 deed from Ms. Bossier to Mr. Plant had never been recorded, and because the deeds between Ms. Bossier and Mr. Plant did not include Parcel B, the driveway on the Property, the closing agent initiated several transactions. First, Mr. Plant executed a confirmatory deed of the Property, which included Parcel B, to Ms. Bossier. Next, Ms. Bossier, indicating that she was the seller of the Property, executed a deed conveying the Property, consisting of both Lot Number Two and Parcel B, back to Mr. Plant. Finally, Mr. Plant executed a deed of trust to Paramount as security for a $160,000 loan, and the loan was disbursed to Mr. Plant. The deed of trust securing the loan and the deeds executed by Ms. Bossier and Mr. Plant were recorded on April 15, 2005.

On April 13, 2005, more than one year after the March 24, 2003, deed of trust was executed, and two days before Paramount's deed of trust was recorded, Ameriquest recorded the deed of trust dated March 24, 2003.

On June 17, 2005, Ameriquest filed suit against Mr. Plant and Ms. Bossier in the United States District Court for the District of Maryland. In its Complaint, Ameriquest alleged breach of contract against Mr. Plant, based on his refusal to comply with the Settlement Agreement, and unjust enrichment against Ms. Bossier. Ameriquest subsequently filed a Motion for Summary Judgment.

In January 2006, Paramount refinanced its loan to Mr. Plant, with a loan for $183,000, which was secured by a deed of trust recorded by Paramount on April 7, 2006.

On October 23, 2006, Paramount filed a Complaint for Declaratory Judgment against Ameriquest in the Circuit Court for Calvert County. In its complaint, Paramount sought a declaration that the deed of trust between Ameriquest and Mr. Plant, which was recorded on April 13, 2005,

was void, or, alternatively, that it was subordinate to the deed of trust by and between Paramount and Mr. Plant dated January 18, 2006, and recorded on April 7, 2006.

On February 13, 2007, Ameriquest filed a Counterclaim for Declaratory Judgment "to establish that Ameriquest's Deed of Trust has priority over any Paramount Deed of Trust."

On February 13, 2007, the United States District Court for the District of Maryland granted, in part, Ameriquest's Motion for Summary Judgment in its suit against Mr. Plant. The court concluded that "[t]here is no genuine dispute that Plant breached the Settlement Agreement," which "required [Mr.] Plant to cooperate with Ameriquest." The court rendered judgment against Mr. Plant in the amount of $221,000, plus prejudgment interest. The court denied summary judgment as to Ms. Bossier.

On June 19, 2007, in the Circuit Court for Calvert County, Paramount filed a Motion for Summary Judgment with respect to its claim that Ameriquest's deed of trust was void. In response, on July 12, 2007, Ameriquest filed a Cross Motion for Summary Judgment. On October 10, 2007, the circuit court held a hearing on the motions for summary judgment. On November 2, 2007, the circuit court granted Paramount's Motion for Summary Judgment, denied Ameriquest's Cross Motion, and declared Ameriquest's deed of trust "null and void."

184 Md.App. at 124–129, 964 A.2d at 281–284. (Footnotes omitted).

The "ORDER" entered by the Circuit Court included the following analysis:

Both parties take the position that their deed has priority over the other. Ameriquest asserted that the deed from the March 24, 2003 transaction, recorded on April 13, 2005, was valid and enforceable, and has priority over Paramount's later recorded deed, pursuant to MD. CODE ANN., Real Prop., Section 3–203. Paramount asserted that Ameriquest's March 24 deed is void for several reasons, thus

rendering their deed of February 3, 2005, recorded on April 15, 2005, first in priority.

Ameriquest would have this Court believe that cancellation in this situation does not really mean cancellation. The pleadings and the record, however, amply support the finding that the March 24, 2003, mortgage loan to Plant was cancelled, the agreed upon consideration was not exchanged between Ameriquest and Plant, or between Ameriquest and GreenPoint, at the time of the closing, and a new contract was negotiated and executed by Ameriquest and Plant in September, 2004.

\*     \*     \*

Ameriquest also relied on the fact that their March 24, 2003 deed was the first recorded, and argued that places them in priority under Real Property, Section 3–203. The recording statute, however, does not address situations in which a deed may be invalid or unenforceable, for the myriad reasons and situations which can render a deed invalid. It is simply one factor in this situation, and is not a determinative one.

\*     \*     \*

Paramount argued that the Ameriquest deed is void under MD. CODE ANN., Real Prop., Sections 4–106(a) and (b). Subsection (a) requires an affidavit, attached to a mortgage or deed of trust, stating that the recited consideration is true and bona fide. While Ameriquest may have participated in the March 24, 2003 transaction with good faith, and there is no reason to believe they did not, the fact remains that, some time after that date, Ameriquest cancelled the loan. Although there may have been technical delivery of the deed, the loan was not funded, no payment was made. Ameriquest argued that the decision to cancel the loan was reversed, and the loan was funded, when they paid [the] GreenPoint mortgage. They further argue that Judge Bennett, U.S. District Court for the District of Maryland, in his February 13, 2007 Memorandum Opinion, found for Ameriquest and against Plant based on the pay-

ment to GreenPoint. In fact, the Memorandum Opinion states that the March, 2003 loan was cancelled, and based the judgment against Plant on the Settlement Agreement, not the payment to GreenPoint. . . .

Real Property, Section 4–106(b) requires attachment of an affidavit to a mortgage or deed of trust affirming that the actual sum of money advanced at the closing was paid over and disbursed by the secured party (here Ameriquest), no later than the time of the execution and delivery of the mortgage or deed of trust. In this case, there is no dispute from Ameriquest that the loan was not funded at the time of the execution and delivery of the deed. Even assuming that the later payment to GreenPoint constituted funding of the March, 2003 transaction, that payment was not made until May 4, 2004, over a year after the closing. Under Section 4–106(a) and (b), Ameriquest's deed was not valid, and recording an invalid deed does not render the transaction valid and enforceable.

Nor does Ameriquest reliance on the curative statute, Real Property, Section 4–109(b) and (c) provide a resolution in this case. That statute requires that, for a deed which is defective because the affidavit requirements under 4–106(a) and (b) are not met, a judicial challenge must be made to the defective deed within six months of recording, or the faults are considered cured. Paramount is correct that improper or missing affidavits are cured by the statute; false or fictitious ones, however, are not cured. *Duckworth, et ux. v. Bernstein*, 55 Md.App. 710[,721, 466 A.2d 517, 523] (1983).

The loan was cancelled by Ameriquest at some point after the purported closing on March 24, 2003. The record does not reflect how much time elapsed after the purported closing before the loan was cancelled and Plant was informed of the cancellation. Thereafter, Ameriquest began negotiations with Plant for a new agreement—the amount that Plant agreed to repay was the same as the March, 2003 loan, $221,000, but a number of terms were different. The Agreement was fully executed by Ameriquest and Plant by

September 27, 2004, well over a year after the March, 2003 purported closing, and over four months after payment was made to GreenPoint, on May 4, 2004. The amount paid to GreenPoint, $272,625.59, was greater than what Plant agreed to repay, even though the basis of the settlement agreement with Plant was the payment to GreenPoint. Exhibit 6 to Paramount's Memorandum in Support of Motion for Summary Judgment is a copy of the Settlement and Release Agreement. In the Terms section, there are a number of references to the "current loan" and the "new loan," changing the new loan to a fixed rate rather than an adjustable rate, changing the interest rate, and removing a prepayment charge. Ameriquest also waived all lender fees and charges, and agreed to pay all third party fees for the new loan. Plant agreed to cooperate in obtaining a credit report, which could result in a change in the interest rate, and to conduct a new appraisal of the property. There was no argument that the terms of the loans were the same. The Settlement was clearly a separate transaction, and not a fulfillment of the original loan.

Because the Court is convinced that the March, 2003 deed is void and unenforceable, and because application of Real Property, Section 4–106(a) and (b) resolves the issues herein, the Court need not reach the issue of judicial estoppel. It should be noted, however, that Paramount's argument for the application of judicial estoppel is well-taken. The basis of Judge Bennett's decision was the later agreement between Ameriquest and Plant, and had no basis in the March, 2003 transaction. Ameriquest's position in the U.S. District Court case was clearly based on the September, 2004 Settlement Agreement with Plant. In their Complaint in that case, the claim against Plant was for Breach of Contract, based on the Settlement Agreement. They were awarded money damages and attorney's fees against Plant based on that Agreement. Judge Bennett found that there was no dispute that there was a Settlement Agreement between Ameriquest and Plant, that Plant had breached the Settlement Agreement, and, therefore, Judge Bennett awarded

damages to Ameriquest on a motion for summary judgment. There is not any clearer indication that Ameriquest's position was accepted by that Court.

While affirming the judgment of the Circuit Court, the Court of Special Appeals stated:

In this case, there was an affidavit attached to the deed of trust. The affidavit stated: [T]he consideration resided [*sic*] in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust. . . .

The question in this appeal is whether this affidavit satisfied the requisites of R.P. § 4–106. Although the affidavit refers to consideration and states that the funds were disbursed "not later than the execution and delivery" of the deed of trust, there is no dispute that the money was not disbursed at that time. We find that, under these circumstances, the affidavit did not satisfy the requisites of § 4–106.

\*     \*     \*

. . . Although Ameriquest is correct that substantial, rather than literal, compliance is the standard regarding the content of an affidavit of consideration, we hold that there was not substantial compliance with the statute in this case.

\*     \*     \*

. . . here, that Ameriquest subsequently disbursed the amount of money stated in the affidavit did not change the fact that the affidavit of consideration was false when made. Therefore, the mortgage was "void as against creditors of the mortgagor, at least those without notice." *Duckworth,* 55 Md.App. at 721, 466 A.2d 517. *Accord Pagenhardt,* 250 Md. at 338–39, 243 A.2d 494 ("lien of a defective mortgage is subordinate, however, to the claims of creditors who extend-

ed credit subsequent to the date of the mortgage, without actual knowledge of the existence of the mortgage").

\*　　\*　　\*

In the present case, there was an affidavit of disbursement. The affidavit, however, was false. Although the affidavit stated that the money was disbursed not later than the "execution and delivery" of the deed of trust, no money was disbursed at the time. A deed of trust with a materially false affidavit should not be given greater status than a deed with no affidavit. *See Kline v. Inland Rubber Corp.*, 194 Md. 122, 134, 69 A.2d 774 (1949) (" 'The statement thus made in the affidavits being fictitious, it is just as ineffective as if it had been omitted' ") (quoting *Groh v. Cohen*, 158 Md. 638 [149 A. 459] (1930)).

184 Md.App. at 135–140, 964 A.2d at 288–291.

### Discussion

### I.

Section 4–109 of the Real Property Article (R.P.), in pertinent part, provides:

(b) Defective grants recorded on or after January 1, 1973.— If an instrument is recorded on or after January 1, 1973, whether or not the instrument is executed on or after that date, any failure to comply with the formal requisites listed in this section has no effect unless it is challenged in a judicial proceeding commenced within six months after it is recorded.

(c) Failures in formal requisites of an instrument.—For the purposes of this section, the failures in the formal requisites of an instrument are:

(1) A defective acknowledgment;

(2) A failure to attach any clerk's certificate;

(3) An omission of a notary seal or other seal;

(4) A lack of or improper acknowledgment or affidavit of consideration, agency, or disbursement;

(5) An omission of an attestation; or

(6) A failure to name any trustee in a deed of trust.

The present "curative act" was enacted in 1972 when the General Assembly reorganized the real property law of Maryland.[2] The legislative history of this statute includes an eight page "REPORT" filed with the Department of Legislative Reference by the Code Revision Committee of the Maryland State Bar Association's Section of Real Property, Planning and Zoning Law, in which the Committee notes that proposed Section 4–109 "eliminates the need for the annual Curative Act." When the present curative act was first codified in § 4–109 of Article 21, the "COMMENT" that preceded Subtitle 1 of Title IV of this article included the following statement:

Section 4–109 will eliminate the necessity of annual curative acts. The Curative Acts were contained in §§ 96 through 100 of former Article 21. These Curative Acts related to formal deficiencies in an instrument such as those deficiencies set forth in § 4–109. Since these formal requisites will, except with respect to the affidavit of consideration or disbursements and acknowledgments, no longer be applicable in Maryland, it will no longer be necessary to require the General Assembly to pass a formal curative act every year. With respect to formal deficiencies in instruments recorded before the effective date of the statute, these will be considered to be waived unless they are attacked within six months after the effective date of the statute. With respect to any instrument recorded after the effective date of the statute, any formal defect must be attacked within six months after recordation.

■ In *Groh v. Cohen*, 158 Md. 638, 149 A. 459 (1930), while affirming a Circuit Court decree that invalidated two mortgages "[a]s against the specific liens of labor and material claimants, who contributed to the improvement of the mortgaged land," this Court stated:

While there was consequently no pretense that [the mortgagors] actually incurred any of the indebtedness recited in

---

2. Chapter 349, § 1, Laws of 1972.

the mortgages ..., yet the mortgagees made affidavits, in the statutory form, that the considerations stated in their respective mortgages were true and *bona fide* as therein set forth. The statement thus made in the affidavits being fictitious, it is just as ineffective as if it had been omitted. The Code provision (article 21, section 33) that no mortgage "shall be valid except as between the parties thereto, unless there be endorsed thereon an oath or affirmation of the mortgagee that the consideration in said mortgage is true and *bona fide* as therein set forth," cannot be satisfied by an affidavit which is not true in fact. The considerations stated in the mortgages in question purported to be loans to the persons signing the instruments as mortgagors, when in truth no such loans were ever made or contemplated. If the title had been conveyed primarily to the real purchaser, and he had executed the mortgages which in terms secured loans for the payment of the purchase price and the costs of improvements, the mortgagees would have been fully protected from the liens of any pre-existing judgments against the mortgagor. (Code, art. 66, sec.4.) But such a purpose does not justify or validate the use of affidavits which are illusory.

*Id.* at 641, 149 A. at 460.

In *Plitt v. Stevan,* 223 Md. 178, 162 A.2d 762 (1960), while affirming the Circuit Court's factual finding that a mortgage was invalid on the ground that the appellant/mortgagee's affidavit of consideration was not true and *bona fide,* this Court stated:

> The Chancellor found as a fact that there was "a loan of only $5,000," and that "[t]he obvious reason for attempting to make the consideration appeared to be $10,000 was the fact that interest charged was $750 for one month, and by treating this as interest on $10,000 instead of $5,000, the rate might not appear to be too outrageous, although far beyond the legal limit." We cannot hold that the Chancellor was clearly wrong in his finding of fact.

\*       \*       \*

The appellant strongly relies upon the cases of *Smith v. Myers,* 41 Md. 425, and *Govane Bldg. Co. v. Sun Mtge. Co.,* 156 Md. 401 [144 A. 486]. In the *Smith* case, this Court found that an affidavit was not false, where the amount loaned was $5,000, as recited, but the lender retained $ 600 as a bonus or discount. The Court found that the mortgage was not fraudulent, and that the consideration sworn to represented an indebtedness which the mortgagor in good faith acknowledged and intended to repay. In the *Govane* case, this Court found, again in the absence of fraud, that the fact that the recited consideration of $5,000 included sums actually advanced by Moss, although the named mortgagee was Isekoff, the agent of Moss, did not render the mortgage invalid. We think both cases are distinguishable on their facts. The transaction in the instant case falls into the pattern of *Kline v. Inland Rubber Corp.,* 194 Md. 122 [69 A.2d 774], and *Groh v. v. Cohen,* 158 Md. 638 [149 A. 459], where affidavits were held to be illusory and fictitious, and hence ineffective. The considerations there stated "purported to be loans * * *, when in truth no such loans were ever made or contemplated." The same observation applies to the additional $ 5,000 involved in the instant case. Cf. *Sickinger v. Zimel* [6 N.J. 149], 77 A.2d 905 (N.J.) (1951), quite similar on the facts, but based upon a somewhat different statutory provision. See also Note, 45 A.L.R.2d 629.

*Id.* at 181–83, 162 A.2d at 765.

Because a *false* affidavit of consideration or disbursement is not a "formal defect" that must be challenged within six months after it is recorded, we hold that the Circuit Court and the Court of Special Appeals were correct in rejecting Petitioner's argument that Respondent's complaint should have been dismissed pursuant to R.P. § 4–109(b).

## II.

R.P. § 4–106, in pertinent part, provides:

§ 4–106.   Affidavits of consideration and disbursement

(a) Affidavit of consideration required for mortgage or deed of trust.—No mortgage or deed of trust is valid except as between the parties to it, unless there is contained in, endorsed on, or attached to it an oath or affirmation of the mortgagee or the party secured by a deed of trust that the consideration recited in the mortgage or deed of trust is true and bona fide as set forth.

(b) Affidavit of disbursement required for purchase-money mortgage or deed of trust; delivery of net proceeds.—

(1) No purchase-money mortgage or deed of trust involving land, any part of which is located in the State, is valid either as between the parties or as to any third party unless the mortgage or deed of trust contains or has endorsed on, or attached to it at a time prior to recordation, the oath or affirmation of the party secured by the mortgage or deed of trust stating that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party secured by the mortgage or deed of trust to either the borrower or the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and delivery of the mortgage or deed of trust by the borrower. However, this subsection does not apply where a mortgage or deed of trust is given to a vendor in a transaction in order to secure payment to him of all or part of the purchase price of the property. The affidavit required by this subsection is required for only that part of the loan that is purchase money and, if the requirements of this subsection are not satisfied, the mortgage or deed of trust is invalid only to the extent of the part of the loan that is purchase money.

(2) The lender may deliver net proceeds, deducting charges, interests, expenses, or advance escrow and charges due from the borrower, if the following conditions are met:

(i) The charges, interests, expenses, and other deductions listed above have been agreed upon in advance, in writing; and

(ii) The lender provides a schedule of the deductions along with the net proceeds delivered.

(c) By whom affidavits made.—Any affidavit required by this section may be made by one of the several mortgagees or parties secured by the deed of trust and has the same effect as if made by all. The affidavit may be made by any trustee named in the deed of trust, by an agent of the trustee, or by an agent of a mortgagee or of a party secured by the deed of trust.

(d) Affidavit when made by agent.—If the affidavit is made by an agent, he shall make affidavit to be contained in, endorsed on, or attached to the mortgage or deed of trust, that he is the agent of the mortgagee or party secured by the deed of trust, or any one of them, or of the trustee. This affidavit is sufficient proof of agency. The president, other officer of a corporation, or the personal representative of the mortgagee or party secured by the deed of trust also may make the affidavits.

█ It is well settled that the doctrine of "substantial compliance" is applicable to the content of the affidavits required by R.P. § 4–106. *See, e.g. Pagenhardt v. Walsh,* 250 Md. 333, 336, 243 A.2d 494, 496 (1968), and cases cited therein. For that reason, both the Circuit Court and the Court of Special Appeals were correct in applying that test to the affidavits of consideration and disbursement that were attached to the deed of trust at issue. Unfortunately, however, both of those courts applied the substantial compliance test to the operative facts that existed on March 24, 2003. In doing so, they erroneously concluded that Petitioner's subsequent disbursement of the amount of money stated in the affidavit was of no consequence to the issue of whether the affidavit *recorded* by Petitioner constituted substantial compliance with the provisions of R.P. § 4–106.

█ Because the substantial evidence test must be applied to the operative facts that exist on the day that the deed of trust was actually *recorded,* Petitioner's deed of trust was valid if the affidavits attached to it were in substantial compli-

ance with the requirements of R.P. § 4–106 on April 13, 2005. It is undisputed that, prior to recording the deed of trust on that date, (1) bona fide consideration existed as a result of the agreement executed by Petitioner and Plant on September 27, 2004, and (2) Petitioner had paid over and disbursed to GreenPoint the amount of $272,625.59. Under these circumstances, there is no merit in the argument that Petitioner's deed of trust was invalid on April 13, 2005 merely because it was "dated March 24, 2003."

We hold that, because the relevant information contained in the affidavit of consideration and disbursement was true on the date that the deed of trust was actually recorded, (1) the Circuit Court erred in finding that deed of trust "null and void" on the ground that the affidavits of consideration and disbursement were "false," and (2) the Court of Special Appeals erred in affirming the decision of the Circuit Court on the ground that "the affidavit of consideration was false when made." We therefore reverse the judgment of the Court of Special Appeals, and remand the case to that Court for remand to the Circuit Court with directions that the Circuit Court enter judgment in favor of Petitioner.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS THAT THE CASE BE REMANDED TO THE CIRCUIT COURT FOR CALVERT COUNTY AND THAT THE CIRCUIT COURT BE DIRECTED TO ENTER JUDGMENT IN FAVOR OF PETITIONER; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.