# HENRY F. WINGERT, ASSIGNEE, vs. LAURA K. ZEIGLER, PURCHASER.

*Internal Revenue Stamp on Assignment of Mortgage—Inadvertent Failure to Affix Stamp—Effect of Subsequent Stamping by Collector.*

The Act of Congress of June 13th, 1898, requires certain instruments, including all assignments of mortgages, to bear an internal revenue stamp to be affixed by the maker, and it is provided that any person who shall make such assignment without a stamp duly cancelled "with intent to evade the provisions of the Act" shall be guilty of a misdemeanor, and "such instrument, document or paper not being stamped according to law shall be deemed invalid and of no effect." The Act also provides that in all cases where the stamp is not affixed, a party having an interest therein may apply to the Collector of Revenue and, upon paying the prescribed penalty, a stamp may be affixed, and the instrument shall then be held to be as valid as if stamped when made; and power is also given to the collector to remit the penalty and cause the instrument to be stamped when he is satisfied that the failure to stamp it was owing to accident, mistake or inadvertence and without any wilful design to defraud. In this case a mortgage was assigned without being stamped as required by the Act. A sale was made by the assignee and the purchaser excepted to its ratification alleging that the absence of the stamp made the assignment void. The collector subsequently remitted the penalty and stamped the instrument. *Held*, that the assignment was not void under the Act because not stamped, but at most could not be admitted in evidence until stamped, and when that was done by the collector according to the provisions of the Act, the right to use the assignment as if it had been stamped when made was restored, and related back to the time of issue, and that consequently a sale under such assignment is valid and enforceable.*

---

. . * A note concerning the "effect of omission to stamp an instrument, on which the law requires a stamp or to cancel stamps on such an instrument," is appended to *Knox* v. *Rossi*, 48 L. R. A. 305.

Appeal from an order of the Circuit Court for Washington County, (STAKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Henry F. Wingert*, for the appellant.

*Alexander Neill*, for the appellee.

BOYD, J., delivered the opinion of the Court.

On the 14th of November, 1899, a mortgage was assigned to the appellant, Henry F. Wingert, who advertised the property, under a power of sale contained in the mortgage, and on December 12th, 1899, sold it to Laura K. Zeigler, the appellee. The sale was duly reported to the Circuit Court for Washington County and exceptions were filed by the purchaser on the ground that at the time of the sale the assignment of the mortgage was not stamped, as required by the United States Revenue Laws. On the 12th of January, 1900, the Collector of Internal Revenue for the District of Maryland certified that, satisfactory evidence having been furnished him that the failure to affix and cancel stamps to denote the tax due at the time of the assignment was owing to inadvertence and was not wilful, stamps of the proper value had been affixed and cancelled by him, which certificate was noted on the original record by the clerk. The Court below set the sale aside and from that action this appeal was taken.

A question of importance and one concerning which the Courts differed in passing on former internal revenue laws of the United States, was referred to at the argument—that is, how far Congress has the power to declare invalid transfers of property, made in accordance with State laws, by reason of the fact that the instruments used in making such transfers were not stamped as required by the revenue laws of the United States. That has never been determined by this Court and we do not deem it necessary to do so now,

but we only refer to it in order that it may not be understood by what we hereinafter say in reference to the statute before us as intending to concede that such power is vested in Congress under the Constitution of the United States. It will be time enough to pass on it when it becomes necessary, if that shall ever occur, and we do not now mean to intimate any opinion on the subject. Section 13 of the Act of Congress, approved June 13th, 1898, entitled "An Act to provide ways and means to meet war expenditures and for other purposes," provides, "That any person or persons who shall register, issue, sell or transfer, or who shall cause to be issued, registered,. sold or transferred, any instrument, document or paper of any kind or description whatsoever mentioned in Schedule A of this Act, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the tax chargeable thereon, and cancelled in the manner required by law, with intent to evade the provisions of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding fifty dollars, or by imprisonment not exceeding six months, or both, in the discretion of the Court; and such instrument, document or paper, not being stamped according to law, shall be deemed invalid and of no. effect," etc. This is followed by some important provisions for the correction of failure to stamp which will be referred to latter on in this opinion, and will not now be stated.

Schedule A includes assignments of mortgages and, as we have seen, this assignment was duly stamped by the collector within twelve months and his certificate was recorded by the clerk. None of the facts are disputed and the only question therefore to be determined is whether the subsequent action of the collector in stamping the assignment so corrected the effect of the omission to stamp it when made as to entitle the holder of the mortgage to have the sale ratified. No other objection to the validity of the sale is suggested, and it is not shown or even claimed that

the fact that the assignment was not originally stamped in any way affected the price which the property brought—indeed that could not well have been attempted, as no one but the purchaser has objected to the sale. Nor is it suggested that the rights of any other person have in any way intervened and the real purpose of our inquiry must be whether the appellee would by the ratification of this sale acquire such title as she would have had if the assignment had been duly stamped when made.

In order to ascertain the scope of the Act and the effect of the failure to stamp an instrument included in it, such as the one before us, it will be necessary to examine carefully, and somewhat critically, the provisions of the statute. The only language used in it which in terms might seem to indicate the intention of Congress to wholly invalidate an instrument not stamped as required is the concluding clause of the portion of Section 13 quoted above, which, after providing for the penalty, says, " and such instrument, document or paper, not being stamped according to law, shall be deemed invalid and of no effect." That language of itself is undoubtedly open to the construction that it was intended by Congress to declare an instrument embraced by the law invalid and of no effect unless it is stamped—at least until it is properly stamped—but in the connection in which it is used there is another interpretation which can readily be given it, which is far more consonant with justice and the evident purpose of the law. It says " such " instrument, etc., and when we look to see what " such " refers to, we find it is an instrument that the person whose duty it was to stamp it has left unstamped " with intent to evade the provisions of this Act." It is scarcely possible that Congress intended that one who deliberately and intentionally violated the law might escape by paying " a fine not exceeding fifty dollars," while one who was perfectly innocent of so doing should have his title-deed or other valuable paper declared invalid and of no effect. Under the statute it is the duty of the grantor in the deed, or the party issuing,

selling, or transferring the instrument, document or other paper to affix the stamp, and, if the construction contended for be followed, a designing grantor, taking the chances of a prosecution, might impose on an innocent purchaser whose title would be worthless, although he was absolutely free from any suspicion of wrong-doing or intention of evading the law.   We cannot reach the conclusion that such was the intention of Congress when we find the law itself to be so suggestive of the other interpretation.    In *Green* v. *Holway*, 101 Mass. 243, JUSTICE GRAY reviewed the various Acts of Congress on this subject, and cited authorities to show that the provision, "and such instrument, document or paper shall be deemed invalid and of no effect" required a reference to the previous provisions in the section, to ascertain the meaning of the word " such," holding that it only applied to those on which stamps had been omitted with intent to evade the provisions of the law.   The agreement sued on in that case was executed after the Act of 1866 took effect, which used the same language as that in the Act of 1898—" and such instrument, document or paper, *not being stamped according to law*, shall be deemed invalid and of no effect."   The Court considered the effect of the insertion of the words " *not being stamped according to law*," and held that it did not change the meaning of the provision embodied in previous laws, when taken in connection with the other provisions.   In *Moore* v. *Quirk*, 105 Mass. 49, that case was expressly affirmed.   In *Black* v. *Woodrow*, 39 Md. 194, this Court held that an instrument subject to the Act of 1866 was not void or inadmissible in evidence, if the omission to stamp it was without intent to evade the provisions of the Act.   Many other authorities might be cited, including decisions of the Supreme Court of the United States, to show that in regard to some of the earlier Acts of Congress such was the interpretation, and we think this provision in the present law should be so construed, and that it was intended to apply only to those cases where the stamp was omitted to evade the provisions of the law.

But if it had been conceded that the law should be con-
strued to declare any instrument invalid and of no effect so
long as it is not stamped, although omitted innocently, there
are other provisions in the statute which conclusively show
that when one is stamped, under such circumstances as this
assignment was, the error is corrected and, excepting as to
the rights of others acquired in good faith before such sub-
sequent stamping, the instrument is to be treated as if it
had been originally stamped according to law.    Section 13,
after stating what we have quoted above, provides that in
all cases when the stamp is not affixed on certain instru-
ments mentioned, any party having an interest therein can
appear before the collector, who shall upon payment of the
price of the proper stamp and of the penalties prescribed,
affix the stamp *" and the same shall thereupon be deemed
and held to be as valid to all intents and purposes as if
stamped when made or issued."*    It then further provides
that when it shall appear to the collector, to his satisfac-
tion, that an instrument was not duly stamped " by reason
of accident, mistake, inadvertence or urgent necessity, and
without any wilful design to defraud the United States of
the stamp, or to evade or delay the payment thereof," then,
if the instrument, or a properly proven copy thereof, " shall
within twelve calendar months after the making or issuing
thereof" be taken to the collector and the stamp tax paid,
he can remit the penalty and cause the instrument to be
stamped.    And when it is so stamped the officer having
charge of the record is authorized to make a new record
thereof, *" or to note upon the original record* the fact that the
error or omission in the stamping of said original instru-
ment has been corrected pursuant to law,"—thus conclu-
sively showing that it was not intended to make the record
of every unstamped instrument null and void, for, if it was,
the Act would unquestionably have *required* a new record
and would not have authorized the correction of the original
one, made contrary to law.    But it does not stop there, for
it adds *" and the original instrument, or such certified copy or*

*the record thereof, may be used in all courts and places in the same manner and with like effect as if the instrument had been originally stamped."* If Congress had intended to give it effect only from the time it was legally stamped, surely such language would not have been used as that just quoted, for it would have been clearer and simpler to have said that it should only be valid from and after the time it was so stamped, if such was the intention. If that had been done it might in some cases have worked great injustice. For example, under our State law a mortgage must be recorded within six months from its date, unless authorized by an order of Court to be recorded after that time. If, more than six months after one is recorded, it is ascertained that, through some mistake or inadvertence, it was not properly stamped and the mortgagee then complies with the provisions of section 13, has it stamped by the collector within twelve months, and that fact noted on the original record by the clerk, must it be said that the original record was invalid because the mortgage was not then stamped? If so, then, although the United States has been satisfied and the laws of the State complied with, the mortgagee can have no benefit of the mortgage without the aid of a Court of Equity, and then only under the conditions prescribed by section 33 of Art. 16 of the Code. We do not think such a construction of the statute necessary to enable the Government to enforce collection of the tax or within the intention of Congress as gathered from the law itself. It may well happen that an honest mistake may be made—especially by laymen—as to what tax is required. The Courts of this country differed widely as to some of the requirements of the former revenue laws, and doubtless there will be differences as to the present law between judges, lawyers and officers of the Government whose duty it is to enforce it.

But there is still another provision in this section which greatly strengthens the contention of the appellant, and that is the last one. After providing for methods of correcting the omission to stamp instruments, etc., this section

concludes: " But no right acquired in good faith before the stamping of such instrument, or copy thereof, as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid." It is difficult to understand why Congress should have inserted that saving clause if it did not intend that the subsequent stamping should have a retroactive effect. If the law means that the instrument only becomes valid and operative *from* and *after* the time it is stamped, what possible use was there in making the reservation in favor of rights acquired *before* stamping ? Was it not manifestly inserted because Congress understood that the previous provisions of the section might give such effect to an instrument, subsequently stamped, as it would have had if originally stamped, even against the rights acquired in good faith, unless that reservation was inserted ?

It may be well to add that sections 14 and 15 of the Act of 1898 do not strengthen the appellee's contention, but, if they affect it at all, rather weaken it. They do not contain provisions that are new to the internal revenue laws. The first part of section 3421 of the U. S. Revised Statutes (1875) virtually corresponds with section 14, and it includes the provision of section 15, prohibiting the recording of instruments, etc., unless they are stamped, but there is this marked difference between them. The law as codified in that section (3421) provided that the record of an instrument not properly stamped " shall be *utterly void* and shall not be used in evidence," while section 15 of the present law only says it "shall not be used in evidence,"—the inference being that the change was made purposely to exclude the provision as to its being void. This statute it is true prohibits the record of an instrument not properly stamped, and any one violating it is liable to the penalty imposed, but it does not in terms make a record void, and we do not think that the intention to do so can be gathered from it. It is said, however, on behalf of the appellee, that it is not contended that the instrument is absolutely void, but

that the statute prohibits the use of it until it is stamped, and hence that, inasmuch as this assignment was not stamped until after the sale, it was of no effect and the appellant was without authority to sell under the power in the mortgage when the sale was made. But that argument avoids the main question in the case and proceeds on the theory that the instrument is of no use excepting from the time it is stamped, and has no retroactive effect. When the sale was ready for ratification and the Court was called upon to act upon it, there was no legal obstacle in the way of using the assignment in evidence to ascertain the authority of the appellant to sell. Independent of the Act of Congress the authority was vested in him when he made the sale, as he had complied with the requirements of the laws of this State, and under that Act he had done what, by its very terms, enabled him to use it in the Court below *"in the same manner and with like effect"* as if it had been originally stamped—that is, as if it had been stamped when made—subject only to the qualification that no right had been acquired in good faith before the stamping. It is not pretended that any such right had been acquired, hence we must give the assignment the "like effect" it would have had if it had been stamped when made. We have in this State many instances of similar legislation in what are called "curative statutes" to correct errors in deeds, mortgages, etc., defectively executed or acknowledged. Without multiplying examples see sections 78 to 82, inclusive, of Art. 21 of the Code for a number of them. They save the rights of third parties which have been acquired in good faith, and the power to pass such laws has been sustained over and over again by this Court and its predecessors. The principal difference between that class of legislation and this Act of Congress is that the latter authorizes the defect to be cured by the same statute that creates the disability, if the methods prescribed for that purpose are pursued, while the former corrects the error by subsequent statutes.

We are of the opinion, then, that the record of this assignment of the mortgage was not void by reason of not being stamped, but, at most, was only prohibited from being used in evidence before it was stamped, and when that was done by the collector, upon being satisfied that the stamp was omitted through inadvertence and not wilfully, and the clerk noted that fact upon the original record as authorized by the Act, the right to use the assignment, as if it had been stamped when it should have been, was restored and related back to the time it was made, subject only to any rights, in it or the property secured by the mortgage, *bona fide* acquired in the meantime. Inasmuch as no such rights are alleged to have been so acquired we will not discuss the effect and extent of that provision beyond what we have said. Although the cases which were decided by this Court under previous laws are not wholly applicable, several of them do reflect upon the retroactive effect of such subsequent stamping. In *Cooke* v. *England*, 27 Md. 14, the suit was brought on an agreement which was not stamped until the day of trial—over two years after it was made. The Court held that its validity was restored by payment of the penalty and stamp tax, and it was admissible in evidence, although not stamped until after the suit was brought. In *Carson* v. *Phelps*, 40 Md. 73, Carson on the 27th of April, 1868, executed a deed purporting to convey to himself, as trustee, some lots of ground in trust for the purposes therein named, but did not stamp it. He died insolvent in May, 1869, and a creditors' bill was filed against the property included in the deed of trust, and the parties interested in that deed paid the stamp tax and penalty to the collector on the 11th of July, 1870. This Court held that the defect of a want of stamp had been supplied by the affixing of the stamp and the payment of the penalty to the collector, and the deed was sustained as a priority over the general creditors, who were such prior to its execution. Other cases might be cited to show that the result of many decisions has been to give the subse-

quent stamping of instruments under the United States Revenue Laws a retroactive effect, but we will not prolong this opinion by doing so. The decree of the Court below will be reversed and the cause remanded in order that the sale may be ratified.

> *Decree reversed and cause remanded,*
> *the appellee to pay the costs.*

(Decided June 14th, 1900.)