## LERNER v. GLADSTONE.

(Circuit Court of Appeals, Third Circuit. August 26, 1924.)

No. 3113.

**1. Appeal and error ⟣⟢1022(1)—Findings of fact by master, confirmed by court, not disturbed, unless plainly erroneous.**

Findings of fact by master, confirmed by District Court, should not be disturbed on appeal, unless plain mistake is clearly established.

**2. Chattel mortgages ⟣⟢63—Material deviation from truth in affidavit accompanying chattel mortgage invalidates mortgage.**

While substantial compliance with 1 Comp. St. N. J. 1910, p. 463, relating to affidavits accompanying chattel mortgages wherein property does not change possession, is sufficient, any material deviation from truth will invalidate mortgage.

**3. Chattel mortgages ⟣⟢63—Chattel mortgages accompanied by affidavit misrepresenting consideration held void.**

Chattel mortgages executed by one in whose name premises on which property was situated were leased, but who was not actual owner thereof, and which were accompanied by affidavits pursuant to 1 Comp. St. N. J. 1910, p. 463, which erroneously stated consideration, *held* void.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

In the matter of the bankruptcy of Morris Hirschenbein, trading as the Mildred Silk Manufacturing Company. Jacob Lerner appeals from the report of the special master, confirmed by District Court, holding chattel mortgages void. Confirming order affirmed.

Collins & Corbin, of Jersey City, N. J. (David A. Newton and Edward A. Markley, both of Jersey City, N. J., of counsel), for appellant.

Bilder & Bilder, of Newark, N. J. (Samuel Kaufman, of Newark, N. J., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

DAVIS, Circuit Judge. This is an appeal by Jacob Lerner, petitioner, to review an order of the District Court confirming the report of the special master, to whom the matter was referred, holding that two chattel mortgages were void because they were not executed by the owner of the chattels and the affidavits of the mortgagees did not comply with the requirements of the Chattel Mortgage Act of New Jersey. The chattels consisted of merchandise in a store located at 175 East Front street, Plainfield, N. J. When this controversy arose, the merchandise was sold under order of the court, with the stipulation that the lien, if any, of the petitioner, should attach to the proceeds of the sale. Jacob Lerner, the petitioner, contends that Leo Meisler was the owner of the merchandise. He executed one chattel mortgage on September 23, 1921, for $5,000, to Lerner and another, subsequently assigned to Lerner, for $6,000 on October 8, 1921, to the H. F. Electric Company, Inc. The District Court confirmed the report of the special master, and Lerner appealed to this court.

The special master found that Morris Hirschenbein, and not Meisler, was the owner of the chattels covered by the mortgages. Hirschenbein, Meisler, Louis Zatkowski, and Benjamin Zatkowski entered into an agreement to form a corporation and operate a chain of stores. Louis Zatkowski already had a store in Plainfield, and Benjamin Zatkowski had one in Elizabeth, N. J. Meisler was sent by Hirschenbein to rent a store property in Plainfield for the proposed corporation. He leased the property at No. 175 East Front street, taking the lease, however, in his own name, rather than the joint names of himself and associates. The business did not go well, and Meisler and Benjamin Zatkowski withdrew after a month, leaving Hirschenbein and Louis Zatkowski to conduct it. The corporation was never organized, and after a short time the original store of Louis Zatkowski was merged with the store at 175 East Front street under the management of Zatkowski, who later withdrew and left the store to Hirschenbein alone. Zatkowski sold his interest in the enterprise to Hirschenbein for $2,000, and was paid in four notes, of $500 each, and Zatkowski gave a release to Hirschenbein alone, without reference to his brother or Meisler. The lease remained in the name of Meisler, notwithstanding that he had withdrawn from the undertaking.

When Hirschenbein wanted money for the business, Lerner agreed to lend $5,000 to him, but insisted that the mortgage securing it be executed by Meisler because the lease was in his name. This was done, but the money representing the mortgage was given to Hirschenbein, or immediately turned over to him. A little later the second mortgage for $6,000 was executed to the H. F. Electric Company Hirschenbein testified only $4,000 was actually received for the mortgage, two checks for $2,000 each, and one check for $1,000 (the proceeds of which was returned to Lerner in accordance with his demand). All three checks were drawn to the order of Meisler and indorsed by him the following day to Hirschenbein. Two of

the $500 notes, given by Hirschenbein to Zatkowski, were protested on maturity for nonpayment. An attachment was issued by Zatkowski against the merchandise incumbered by the two mortgages. Thereupon, on October 25, 1921, a petition in bankruptcy was filed against Hirschenbein and a receiver was appointed.

The question is: Do these mortgages constitute valid liens on the proceeds of the sale of the merchandise? The determination of this question depends, first, upon the ownership of the mortgaged merchandise; and, second, upon the sufficiency of the affidavits of the mortgagees. The conclusion of the special master as to the ownership of the merchandise is concisely stated in the following extract from his reports:

"These loans were both negotiated by Hirschenbein, and the schedules attached to the mortgages were furnished by him, they having been prepared from his books by his bookkeeper. The only reason given why Meisler signed the two mortgages was that the lease and insurance had been taken in his name temporarily. There appears to be nothing else in the record to indicate that Meisler ever owned the chattel mortgaged property. He never put anything into the enterprise, either money or labor, excepting between $200 and $300. He seldom visited the store, never paid any bills, nor received or claimed any of the profits, and never exercised any act of ownership over the property excepting to insure it in his own name and to incumber it with the two chattel mortgages in question. Hirschenbein and Zatkowski both testified that Lerner knew the business belonged to Hirschenbein, * * * and, when Louis Zatkowski withdrew, the negotiations were had between Louis Zatkowski and Hirschenbein, between whom releases were exchanged; Hirschenbein giving Zatkowski his checks for the settlement, Meisler not entering in that settlement in any way whatever."

With reference to the $5,000 mortgage, the special master found that "it clearly appears that Lerner did not advance the $5,000 on this mortgage on the 23d day of September, as stated in the affidavit attached to the mortgage, for the reason that he did not have the money, and that it was not advanced until the 28th day of the same month, and the affidavit to said mortgage was therefore false." Of the $6,000 mortgage he said: "Lerner did not furnish any money for this loan; Fischpach did not have any to furnish; and, if Rothen-

berg furnished any of it, it was not over $2,000. Perhaps this loan was made without using any money at all. Fischpach admits that he swore to a lie; Rothenberg's testimony shows whether Rothenberg told the truth or not, and it looks very much as if Lerner did not tell the truth either."

[1] The special master had the witnesses before him, heard them testify and saw their demeanor on the stand. He was in a much better position than we to pass judgment upon the truth of their testimony and to determine the facts as they actually were. The learned District Judge agreed with him and confirmed his report. Findings of fact under such circumstances should not be disturbed, unless it is clearly established that a plain mistake has been made. Epstein v. Steinfeld, 210 Fed. 236, 127 C. C. A. 54; Schmid v. Rosenthal, 230 Fed. 818, 145 C. C. A. 128; Sheinberg et al. v. Hoffman, 236 Fed. 343, 149 C. C. A. 475; Himes v. Schmehl, 257 Fed. 69, 74, 168 C. C. A. 281; Arenz v. Astoria Sav. Bank (C. C. A.) 281 Fed. 530.

Independent of the special master's findings, a reading of the testimony satisfies us that his conclusions are correct. The testimony, by which the petitioner seeks to establish his liens, is so improbable, inconsistent, and contradictory as to be incredible. The merchandise covered by these two mortgages, therefore, belonged to the bankrupt, and the trustee in bankruptcy, upon his appointment and qualification, became vested by operation of law with the title of the bankrupt. Section 70 of Bankruptcy Act of 1898 (Comp. St. § 9654).

The findings of the special master relative to both mortgages are conclusive. As to the second, Mr. Fischpach, president of the H. F. Electric Company, Inc., mortgagee of the second mortgage for $6,000, settles the facts. Notwithstanding that he subscribed to the affidavit that $6,000 was advanced by the electric company as the true consideration, he testified that only $5,000 was advanced by the mortgagee. Hirschenbein said that $1,000 of the $5,000 was returned to Lerner, leaving the real consideration only $4,000.

The Chattel Mortgage Act of New Jersey provides that: "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and

as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder of said mortgage, his agent, or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon." 1 Compiled Statutes of New Jersey, 463.

[2] While New Jersey courts have departed from strict technicality to substantial compliance with the act, yet any material deviation from the truth will invalidate the mortgage. Collerd v. Tully, 78 N. J. Eq. 557, 560, 80 Atl. 491, Ann. Cas. 1912C, 78; In re Novelty Web Co., 236 Fed. 501, 149 C. C. A. 553; McCullough v. McCrea (C. C. A.) 287 Fed. 342; Milberg v. McCullough (C. C. A.) 292 Fed. 103. Meisler had no legal authority to execute the mortgages. The property did not belong to him. And further, that Lerner did not advance the money, and did not have it to advance, or to make good the check on the day as represented in the affidavit, is a substantial departure from the truth, and might result seriously, if given judicial sanction. To give a check without having money in bank to meet it is so serious as to be a crime in most jurisdictions, and when such a check is the consideration for a mortgage, there is in fact no consideration.

[3] The affidavit misrepresented the fact. That money five days later was deposited, so that the fact then accorded with the representation, cannot legalize a void mortgage. The affidavit to the $6,000 mortgage was admittedly false. It follows that both mortgages are void. Hunt v. Ludwig, 93 N. J. Eq. 314, 116 Atl. 699, American Soda Fountain Co. v. William E. Stolzenbach, 75 N. J. Law, 721, 68 Atl. 1078, 16 L. R. A. (N. S.) 703, 127 Am. St. Rep. 822; Howell v. Stone & Downey, 75 N. J. Eq. 289, 292, 71 Atl. 914; Simpson v. Anderson, 75 N. J. Eq. 581, 73 Atl. 493; Breit v. Solferino, 77 N. J. Law, 436, 72 Atl. 79; Shupe v. Taggart, 93 N. J. Law, 123, 107 Atl. 50.

It follows that the order confirming the special master's report is affirmed.