964 A.2d 279

# AMERIQUEST MORTGAGE COMPANY

v.

# PARAMOUNT MORTGAGE SERVICES, INC.

**No. 2309 Sept.Term, 2007.**

Court of Special Appeals of Maryland.

Feb. 3, 2009.

Daniel J. Tobin, Gareth S. Smith (Ballard Spahr Andrews & Ingersoll, LLP, on brief), Bethesda, for Appellant.

Charles F. Obrecht, Jr. (Obrecht and Obrecht, on brief), Severna Park, for Appellee.

Panel: JAMES R. EYLER, ZARNOCH and GRAEFF, JJ.

GRAEFF, Judge.

This case involves a lien priority dispute between two mortgage lenders. Appellant, Ameriquest Mortgage Company ("Ameriquest"), appeals from a decision of the Circuit Court for Calvert County granting summary judgment on the motion for declaratory judgment filed by appellee, Paramount Mortgage Services, Inc. ("Paramount"), and declaring that Ameriquest's March 23, 2003, deed of trust was invalid. Ameriquest presents the following three issues for our review:

    I.    Does a defective affidavit of consideration and/or disbursement render a deed of trust void and unenforceable?

II. Is Paramount's claim barred by Maryland's curative statute, which corrects defects in compliance with "formal requisites" unless legal action is initiated within six months of recordation?

III. Does judicial estoppel bar Ameriquest's claim?

We shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1992, Rex Plant acquired title to property at 3650 Yellow Bank Road, Dunkirk, Maryland, in Calvert County (the "Property"). The Property was described as Lot Number Two (2) and Parcel B, containing 0.34 acres. Parcel B is the driveway leading to Yellow Bank Road.

■ In 2000, Mr. Plant began a romantic relationship with Colleen Bossier, and they lived together on the Property beginning in mid–2000. On or about November 15, 2000, Mr. Plant sold the Property to Ms. Bossier. Pursuant to the sales contract, Ms. Bossier agreed to pay $213,000 to Mr. Plant, including $10,650 in earnest money. No such earnest money was ever paid. To finance her purchase of the Property, Ms. Bossier executed a deed of trust with GreenPoint Mortgage Funding, Inc. ("GreenPoint") to secure a loan in the amount of $202,350.[2] Thereafter, both Ms. Bossier and Mr. Plant tendered mortgage payments to GreenPoint. On January 17, 2001, the deed of trust and property deed were recorded.[3]

---

1. For purposes of this appeal, we will assume the accuracy of the undisputed background facts set forth in the filings included in the record.

2. A deed of trust is a "security device" that "transfers legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary." *Springhill Lake Investors Ltd. P'ship v. Prince George's County*, 114 Md.App. 420, 428, 690 A.2d 535, *cert. denied*, 346 Md. 240, 695 A.2d 1229 (1997).

3. Neither of these documents included Parcel B, to which Mr. Plant retained legal title.

In mid–2001, the relationship between Mr. Plant and Ms. Bossier soured, and Ms. Bossier moved out. Pursuant to a recorded Land Installment Contract dated September 26, 2002, Ms. Bossier sold the Property back to Mr. Plant for $200,251.82. That contract provided that Mr. Plant would make payments due on Ms. Bossier's GreenPoint mortgage loan directly to GreenPoint. The contract provided that Mr. Plant could refinance the GreenPoint loan and, upon its payoff, Ms. Bossier would convey the Property to Mr. Plant.

In February 2003, Mr. Plant submitted an application for mortgage financing to Ameriquest, a residential mortgage lender. He stated that he was purchasing the Property from Ms. Bossier. The application contained false information, including fabricated checks, purporting to show that he had been making direct payments to Ms. Bossier pursuant to a land installment contract. Mr. Plant acknowledged that he never made direct payments to Ms. Bossier. Based upon the information furnished by Mr. Plant, Ameriquest understood that the proceeds from its loan would be used to pay off Ms. Bossier's GreenPoint mortgage. It approved Mr. Plant's application for mortgage financing in the amount of $221,000, which it believed would be sufficient to both pay off the mortgage and cover associated closing costs.

On March 24, 2003, the purported closing took place. At the closing, Mr. Plant executed and delivered a deed of trust granting Ameriquest a security interest in the Property subject to the $221,000 loan.[4] Appended to this deed of trust was an affidavit of consideration and disbursement, which certified, in pertinent part:

I Hereby Certify, that on this 24 day of March, 2003, before me, the subscriber, A Notary Public of the State of Maryland, in and for the County of Baltimore personally

---

4. The day after the purported closing, Ms. Bossier executed a deed to Mr. Plant. This deed, which was never recorded, as well as the deed of trust, encumbered only Lot Number Two, which was what Mr. Plant originally conveyed to Ms. Bossier. Parcel B, to which Mr. Plant retained title, was not encumbered by Ameriquest's deed of trust.

appeared Casey M. Busch the agent of the party secured by the foregoing Deed of Trust ... made oath in due form of law that the consideration resided [*sic*] in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

The deed of trust also provided, in part, that it "secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note...."

Following the closing, Ameriquest learned that the Green-Point mortgage was significantly more than Mr. Plant had represented, and it cancelled the loan.[5] This decision was not communicated to Mr. Plant, however, and Mr. Plant remitted at least seven payments to Ameriquest between April 2003 and January 2004, totaling $15,137.98. Greenpoint, meanwhile, was not receiving any payments. In early 2004, it decided to foreclose on Ms. Bossier's mortgage. On May 4, 2004, after being contacted by Mr. Plant's lawyer and after reviewing the situation, Ameriquest paid off the GreenPoint mortgage in the amount of $272,625.59, thereby satisfying Ms. Bossier's mortgage debt in full. In so doing, Ameriquest expected to absorb a loss because it agreed to pay off Ms. Bossier's mortgage in return for Mr. Plant's promise to pay $221,000. GreenPoint released its encumbrance on the Property on May 10, 2004.

---

5. On appeal, Ameriquest contends that it cancelled the funding of the loan, as opposed to canceling the loan. In the pleadings below, however, Ameriquest used the terms interchangeably, referring to canceling the loan and canceling the funding of the loan. As discussed, *infra*, we agree with the trial court's assessment that the loan was cancelled.

Ameriquest then negotiated a new agreement with Mr. Plant. An initial letter agreement was signed on July 9, 2004. On September 27, 2004, Mr. Plant and Ameriquest executed a Settlement and Release Agreement ("Settlement Agreement"), which provided that the parties "have agreed to rewrite the loan." Mr. Plant agreed to pay $221,000, the same amount involved in March 2003. A number of the terms, however, were different, including a fixed, rather than variable, rate, no prepayment charge, and no lender or third-party fees and charges. Pursuant to the Settlement Agreement, Mr. Plant, agreed, among other things, to: (i) "Cooperate in a timely manner with regard to providing current income documentation and proof of employment"; (ii) "permit[ ] an independent appraiser to conduct a new appraisal of the property;" (iii) furnish proof that the property taxes were current; and (iv) "[p]rovide a binder evidencing hazard . . . insurance coverage on the Property."

In the six weeks following the execution of the Settlement Agreement, Ameriquest investigated the title to the Property, and it tried to communicate with Mr. Plant regarding actions needed to finalize settlement. Although Ameriquest had some initial contact with Mr. Plant's counsel on November, 15, 2004, Mr. Plant and his lawyer thereafter ceased responding to Ameriquest's inquiries. According to Ameriquest, Plant failed to tender any payments after signing the Settlement Agreement.

In December 2004, Mr. Plant began negotiations with Paramount in an effort to secure additional financing.[6] On February 3, 2005, Paramount conducted the closing of a loan. Because the March 2003 deed from Ms. Bossier to Mr. Plant had never been recorded, and because the deeds between Ms. Bossier and Mr. Plant did not include Parcel B, the driveway on the Property, the closing agent initiated several transactions. First, Mr. Plant executed a confirmatory deed of the

---

6. Mr. Plant's counsel ceased representing Mr. Plant at some time in early 2005, when she learned of his plan to secure additional financing from Paramount.

Property, which included Parcel B, to Ms. Bossier. Next, Ms. Bossier, indicating that she was the seller of the Property, executed a deed conveying the Property, consisting of both Lot Number Two and Parcel B, back to Mr. Plant. Finally, Mr. Plant executed a deed of trust to Paramount as security for a $160,000 loan, and the loan was disbursed to Mr. Plant. The deed of trust securing the loan and the deeds executed by Ms. Bossier and Mr. Plant were recorded on April 15, 2005.

On April 13, 2005, more than one year after the March 24, 2003, deed of trust was executed, and two days before Paramount's deed of trust was recorded, Ameriquest recorded the deed of trust dated March 24, 2003.

On June 17, 2005, Ameriquest filed suit against Mr. Plant and Ms. Bossier in the United States District Court for the District of Maryland. In its Complaint, Ameriquest alleged breach of contract against Mr. Plant, based on his refusal to comply with the Settlement Agreement, and unjust enrichment against Ms. Bossier. Ameriquest subsequently filed a Motion for Summary Judgment.

In January 2006, Paramount refinanced its loan to Mr. Plant, with a loan for $183,000, which was secured by a deed of trust recorded by Paramount on April 7, 2006.

On October 23, 2006, Paramount filed a Complaint for Declaratory Judgment against Ameriquest in the Circuit Court for Calvert County. In its complaint, Paramount sought a declaration that the deed of trust between Ameriquest and Mr. Plant, which was recorded on April 13, 2005, was void, or, alternatively, that it was subordinate to the deed of trust by and between Paramount and Mr. Plant dated January 18, 2006, and recorded on April 7, 2006. On February 13, 2007, Ameriquest filed a Counterclaim for Declaratory Judgment "to establish that Ameriquest's Deed of Trust has priority over any Paramount Deed of Trust."

On February 13, 2007, the United States District Court for the District of Maryland granted, in part, Ameriquest's Motion for Summary Judgment in its suit against Mr. Plant. The court concluded that "[t]here is no genuine dispute that Plant

breached the Settlement Agreement," which "required [Mr.] Plant to cooperate with Ameriquest." The court rendered judgment against Mr. Plant in the amount of $221,000, plus pre-judgment interest. The court denied summary judgment as to Ms. Bossier.

On June 19, 2007, in the Circuit Court for Calvert County, Paramount filed a Motion for Summary Judgment with respect to its claim that Ameriquest's deed of trust was void. In response, on July 12, 2007, Ameriquest filed a Cross Motion for Summary Judgment. On October 10, 2007, the circuit court held a hearing on the motions for summary judgment. On November 2, 2007, the circuit court granted Paramount's Motion for Summary Judgment, denied Ameriquest's Cross Motion, and declared Ameriquest's deed of trust "null and void."

In granting summary judgment in favor of Paramount, the court first observed that "[t]he pleadings and the record ... amply support the finding that the March 24, 2003, mortgage loan to Plant was cancelled, the agreed upon consideration was not exchanged between Ameriquest and Plant, or between Ameriquest and GreenPoint, at the time of the closing, and a new contract was negotiated and executed by Ameriquest and Plant in September, 2004." With respect to the loan's cancellation, the court cited eleven references by Ameriquest, in its pleadings, indicating that it cancelled the March 2003 loan to Mr. Plant.

The court rejected Ameriquest's argument that its deed took priority over Paramount's deed pursuant to Maryland's recording statute, Md.Code (2002, 2008 Supp.), § 3-203 of the Real Property ("R.P.") Article, because it was recorded first. The court explained that the recording statute "does not address situations in which a deed may be invalid or unenforceable, for the myriad reasons and situations which can render a deed invalid." It noted that "[i]t is simply one factor in this situation, and is not a determinative one."

The court concluded that Ameriquest's deed of trust was invalid under R.P. §§ 4-106(a) and (b), which provide for

mandatory affidavits with respect to deeds of trust. It reasoned:

> Sub-section (a) requires an affidavit, attached to a mortgage or deed of trust, stating that the recited consideration is true and bona fide. While Ameriquest may have participated in the March 24, 2003 transaction with good faith, and there is no reason to believe they did not, the fact remains that, some time after that date, Ameriquest cancelled the loan. Although there may have been technical delivery of the deed, the loan was not funded, no payment was made. Ameriquest argued that the decision to cancel the loan was reversed, and the loan was funded, when they paid [the] GreenPoint mortgage. They further argue that Judge Bennett, U.S. District Court for the District of Maryland, in his February 13, 2007 Memorandum Opinion, found for Ameriquest and against Plant based on the payment to Green-Point. In fact, the Memorandum Opinion states that the March, 2003 loan was cancelled, and based the judgment against Plant on the Settlement Agreement, not the payment to GreenPoint. . . .
>
> Real Property, Section 4–106(b) requires attachment of an affidavit to a mortgage or deed of trust affirming that the actual sum of money advanced at the closing was paid over and disbursed by the secured party (here Ameriquest), no later than the time of the execution and delivery of the mortgage or deed of trust. In this case, there is no dispute from Ameriquest that the loan was not funded at the time of the execution and delivery of the deed. Even assuming that the later payment to GreenPoint constituted funding of the March, 2003 transaction, that payment was not made until May 4, 2004, over a year after the closing. Under Section 4–106(a) and (b), Ameriquest's deed was not valid, and recording an invalid deed does not render the transaction valid and enforceable.

Additionally, the court rejected Ameriquest's assertion that the curative statute, R.P. § 4–109, protected its deed of trust, explaining:

That statute requires that, for a deed which is defective because the affidavit requirements under 4–106(a) and (b) are not met, a judicial challenge must be made to the defective deed within six months of recording, or the faults are considered cured. Paramount is correct that improper or missing affidavits are cured by the statute; false or fictitious ones, however, are not cured. . . .

The loan was cancelled by Ameriquest at some point after the purported closing on March 24, 2003. The record does not reflect how much time elapsed after the purported closing before the loan was cancelled and Plant was informed of the cancellation. Thereafter, Ameriquest began negotiations with Plant for a new agreement-the amount that Plant agreed to repay was the same as the March, 2003 loan, $221,000, but a number of terms were different. The Agreement was fully executed by Ameriquest and Plant by September 27, 2004, well over a year after the March, 2003 purported closing, and over four months after payment was made to GreenPoint, on May 4, 2004. The amount paid to GreenPoint, $272,625.59, was greater than what Plant agreed to repay, even though the basis of the settlement agreement with Plant was the payment to GreenPoint. . . . In the Terms section, there are a number of references to the "current loan" and the "new loan," changing the new loan to a fixed rate rather than an adjustable rate, changing the interest rate, and removing a prepayment charge. Ameriquest also waived all lender fees and charges, and agreed to pay all third party fees for the new loan. Plant agreed to cooperate in obtaining a credit report, which could result in a change in the interest rate, and to conduct a new appraisal of the property. There was no argument that the terms of the loans were the same. The Settlement was clearly a separate transaction, and not a fulfillment of the original loan.

Finally, the court declined to "reach the issue of judicial estoppel" because it was "convinced that the March, 2003 deed is void and unenforceable, and because application of Real Property, Section 4–106(a) and (b) resolves the issues here-

in. . . ." Nonetheless, it stated that "Paramount's argument for the application of judicial estoppel is well-taken." The court reasoned:

The basis of [the U.S. District Court's] decision was the later agreement between Ameriquest and Plant, and had no basis in the March, 2003 transaction. Ameriquest's position in the U.S. District Court case was clearly based on the September, 2004 Settlement Agreement with Plant. In their Complaint in that case, the claim against Plant was for Breach of Contract, based on the Settlement Agreement. They were awarded money damages and attorney's fees against Plant based on that Agreement. [The U.S. District Court] found that there was no dispute that there was a Settlement Agreement between Ameriquest and Plant, that Plant had breached the Settlement Agreement, and, therefore, [the U.S. District Court] awarded damages to Ameriquest on a motion for summary judgment.

The circuit court issued an order declaring that Ameriquest's deed was "null and void" and "did not convey any interest from Rex Plant to Ameriquest Mortgage Company[ ] in the property." This appeal followed.

## STANDARD OF REVIEW

■ The standard of review of a " 'declaratory judgment entered as the result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law.' " *Claggett v. Md. Agric. Land Pres. Found.*, 182 Md.App. 346, 368, 957 A.2d 1083 (quoting *Olde Severna Park Improvement Ass'n v. Gunby*, 402 Md. 317, 329, 936 A.2d 365 (2007)), *cert. granted,* 406 Md. 743, 962 A.2d 370 (2008). In *Claggett*, we explained:

We "review the record in the light most favorable to [appellant as] the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party." When, as here, there is no dispute of

material fact, "we proceed to determine whether the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted).

## DISCUSSION

Ameriquest asserts that its "deed of trust was executed, delivered, and recorded long before Paramount's," and therefore, under "Maryland's recording statute, Ameriquest's lien is superior to Paramount's." It challenges, on several grounds, the circuit court's ruling granting Paramount's motion for summary judgment, and its finding that Ameriquest's deed of trust was "null and void." First, it argues that the circuit court erroneously determined that the alleged defects in Ameriquest's affidavit "rendered the deed of trust void and unenforceable." In Ameriquest's view, because its affidavit was executed in good faith and demonstrated substantial compliance, any defects were insufficient to render the deed void. Second, Ameriquest argues that the court "should not have even reached the question of whether alleged defects in the affidavit of consideration and disbursement voided the deed of trust" because Paramount's "challenge to Ameriquest's deed of trust is time-barred as a matter of law." Ameriquest argues that Paramount missed, "by more than a year," the six-month deadline under R.P. § 4–109. Ameriquest's third contention is that the circuit court erred "when it suggested that the doctrine of judicial estoppel bars Ameriquest from asserting its first-lien position."

In response, Paramount argues that Ameriquest's assertion that its deed of trust has priority because it was recorded first "misses the point" because it was not a valid deed. Paramount argues that the trial court properly found Ameriquest's deed of trust to be "void and unenforceable because the underlying loan was cancelled, no funds were disbursed thereunder, and the affidavits of consideration and disbursement required by R.P. § § 4–106(a) and (b) were therefore false or fictitious." Paramount further asserts that the curative statute cures "a failure of formal requisites," but it "does not cure a false affidavit of consideration or disbursement, where no

funds were disbursed at or before the delivery of the mortgage by the borrower or even thereafter." Finally, Paramount contends that Ameriquest is judicially estopped from arguing that it merely cancelled funding for the loan, rather than canceling the loan itself, based on the position it took in its lawsuit against Mr. Plant in federal court.

We hold that the circuit court properly granted summary judgment in favor of Paramount on the ground that Ameriquest's deed of trust was void and that Maryland's curative statute did not bar Paramount's claim. Because we affirm the circuit court on the first two issues raised, it is not necessary for us to address whether Ameriquest's claim is barred by judicial estoppel.

## I.

We begin by considering Ameriquest's contention that the circuit court erred in finding that the deed of trust was void and unenforceable due to defects in the affidavit filed with the deed of trust. R.P. § 4–106 provides, in pertinent part:

(a) No mortgage or deed of trust is valid except as between the parties to it, unless there is contained in, endorsed on, or attached to it an oath or affirmation of the mortgagee or the party secured by a deed of trust that the consideration recited in the mortgage or deed of trust is true and bona fide as set forth.

(b)(1) No purchase-money mortgage or deed of trust involving land, any part of which is located in the State, is valid either as between the parties or as to any third party unless the mortgage or deed of trust contains or has endorsed on, or attached to it at a time prior to recordation, the oath or affirmation of the party secured by the mortgage or deed of trust stating that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party secured by the mortgage or deed of trust to either the borrower or the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and

delivery of the mortgage or deed of trust by the borrower. . . .

In this case, there was an affidavit attached to the deed of trust. The affidavit stated:

[T]he consideration resided [*sic*] in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust. . . .

The question in this appeal is whether this affidavit satisfied the requisites of R.P. § 4–106. Although the affidavit refers to consideration and states that the funds were disbursed "not later than the execution and delivery" of the deed of trust, there is no dispute that the money was not disbursed at that time. We find that, under these circumstances, the affidavit did not satisfy the requisites of § 4–106.

The Court of Appeals has explained the purpose of § 4–106 as follows:

This [C]ourt has frequently declared it was the purpose of this statutory provision to prevent fraudulent transfers of property upon false or pretended considerations, and not only thus to protect creditors against frauds, but also to enable them to claim against such instruments when executed without the required affidavit as void in law, no matter how the question of actual fraud may stand.

*Pagenhardt v. Walsh,* 250 Md. 333, 336, 243 A.2d 494 (1968) (quoting *Marlow v. McCubbin,* 40 Md. 132 (1874)). *Accord Duckworth v. Bernstein,* 55 Md.App. 710, 721, 466 A.2d 517 ("The statutorily-prescribed affidavit of consideration is intended to protect against fraud; chiefly fraud against creditors of the mortgagor"), *cert. denied,* 298 Md. 243, 469 A.2d 452 (1983).

■ Section 4–106 imposes two separate requirements; subsection (a) requires an affidavit of consideration and subsection (b) requires an affidavit of disbursement. *Dryfoos v. Hostetter*, 268 Md. 396, 403, 302 A.2d 28 (1973). The result of noncompliance is different for each requirement. *Id.*

■ With respect to noncompliance with the requirement to provide an affidavit regarding consideration:

> [S]ubstantial compliance with the requirement that an affidavit of consideration be endorsed on a mortgage was sufficient if the transaction were entered into in good faith, but ... where the affidavit was deficient in form, the mortgage was a nullity, except as between the parties and as to others having actual notice. As a consequence, under such circumstances, a mortgage is not absolutely void, but is given effect as an equitable mortgage as between the parties and as to those having actual notice.

*Id.* at 403, 302 A.2d 28 (citing *Pagenhardt*, 250 Md. at 341–342, 243 A.2d 494). *Accord Phillips v. Pearson*, 27 Md. 242, 256–57 (1867) (act does not declare that "mortgage shall be void, but that no mortgage shall be valid and effective, except as against the mortgagors or grantors, unless sanctioned by an affidavit"); *Sandler v. Freeny*, 120 F.2d 881, 883 (4th Cir.1941) (applying Maryland law and stating that affidavit accompanying the mortgage "must substantially state the truth with regard to the consideration passing from the mortgagee, or the mortgage will be invalid"). Thus, in the absence of an affidavit of consideration, the mortgage is not wholly void, but it is void as against creditors. Similarly, a false or fictitious affidavit is void as against creditors. *See Duckworth*, 55 Md.App. at 721, 466 A.2d 517 (If the affidavit is false or fictitious, "the mortgage is void as against creditors of the mortgagor, at least those without notice.").

■ A different result obtains, however, with respect to a violation of § 4–106(b), which requires an affidavit of disbursement. *Dryfoos*, 268 Md. at 403, 302 A.2d 28. The "absence of an affidavit of disbursement from a deed of trust ... brings about a sharply different result. The deficient deed of trust is

invalid as to the parties as well as to third persons: in other words, it is wholly void." *Id.* Thus, in *Dryfoos,* the deed of trust that bore no affidavit of disbursement was "of no effect." *Id.* at 404, 302 A.2d 28.

We will address each of the requirements of § 4–106. With respect to the requirement of § 4–106(a), requiring an affidavit of consideration, Ameriquest contends that the affidavit was made in good faith, and it was not fictitious because Ameriquest intended to give Mr. Plant $221,000 to pay off the GreenPoint loan. Ameriquest argues that there was substantial compliance with § 4–106(a), and therefore, the deed of trust is not void against creditors, including Paramount. Although Ameriquest is correct that substantial, rather than literal, compliance is the standard regarding the content of an affidavit of consideration, we hold that there was not substantial compliance with the statute in this case.

Ameriquest relies upon the cases of *Smith v. Myers,* 41 Md. 425 (1875), and *Govane Bldg. Co. v. Sun Mtge. Co.,* 156 Md. 401, 144 A. 486 (1929), in support of its argument that the affidavit here substantially complied with § 4–106(a). Those cases, however, clearly are distinguishable. In *Smith,* an affidavit attached to a mortgage indicated that the consideration for the mortgage was $5,000, but the actual consideration was a loan of $4,400. *Id.* at 427. The Court of Appeals noted that the mortgagee had agreed to give the $600 difference to the mortgagor as a bonus for the loan. *Id.* The Court stated that "the note truly represents the contract made between the parties," and the "the amount of money loaned was obtained for the purpose of meeting the demands of pressing debts, and **was actually applied to their payment.**" *Id.* at 433 (emphasis added).

In *Govane,* the Court upheld a mortgage as to third parties, with an affidavit that stated that the mortgage was secured by a $5,000 debt, when it actually secured indebtedness of "not over $3,453.75." *Id.* at 406, 144 A. 486. The Court observed, however, that "[o]f the $5,000 claimed to have been lent ... $4,425 is fairly well accounted for," and the "balance was made

up of cash advanced from time to time." *Id.* at 405, 144 A. 486.

In *Sandler v. Freeny,* 120 F.2d at 885, the United States Court of Appeals for the Fourth Circuit reviewed these and other Maryland cases to conclude that, where "there is no fraud and no intentional misstatement of fact," an **"incidental inaccuracy** in the recital of the consideration, which confers no benefit upon the parties to the transaction and works no detriment to the creditors, will not invalidate the instrument." (Emphasis added.) There, the affidavit stated that $3,900 was advanced as part of the purchase money for the property. *Id.* at 882. The Court found substantial compliance with the statute, noting that, although the entire sum was not applied "as part of the purchase money for the property," the "mortgage debt was bona fide," and the **"entire sum was actually advanced."** *Id.* (Emphasis added.)

Here, by contrast, the money was not actually advanced as alleged in the affidavit, and therefore, it cannot be said that there was an "incidental inaccuracy in the recital of consideration." Accordingly, there was not substantial compliance with § 4–106(a).

With respect to Ameriquest's argument that the money was advanced at a later date, we find persuasive the reasoning in *Lerner v. Gladstone,* 1 F.2d 89, 91 (3d Cir.1924). That case involved the application of "the Chattel Mortgage Act of New Jersey," which provided that a mortgage "shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith," unless an affidavit "stating the consideration of said mortgage" was attached. *Id.* at 90–91. The United States Court of Appeals for the Third Circuit noted that, although New Jersey courts looked to substantial compliance with the act, "any material deviation from the truth will invalidate the mortgage." *Id.* at 91. In that case, the required affidavit stated that $5,000 was advanced on the mortgage on September 23, 1921, but the money was not advanced as stated. *Id.* at 91. The money was advanced five days later, but the court still found that the

affidavit was "a substantial departure from the truth." *Id.* at 91. Pertinent to this case, the court stated: "That money five days later was deposited, so that the fact then accorded with the representation, cannot legalize a void mortgage." *Id.*

Similarly, here, that Ameriquest subsequently disbursed the amount of money stated in the affidavit did not change the fact that the affidavit of consideration was false when made. Therefore, the mortgage was "void as against creditors of the mortgagor, at least those without notice." *Duckworth,* 55 Md.App. at 721, 466 A.2d 517. *Accord Pagenhardt,* 250 Md. at 338–39, 243 A.2d 494 ("lien of a defective mortgage is subordinate, however, to the claims of creditors who extended credit subsequent to the date of the mortgage, without actual knowledge of the existence of the mortgage").

It is not clear in this case whether Paramount qualifies as a creditor without notice of an Ameriquest mortgage. The court properly granted summary judgment without resolving this factual issue, however, because, in addition to a failure to comply with § 4–106(a), there was a failure to comply with § 4–106(b), which requires an affidavit of disbursement.

As noted, a failure to comply with § 4–106(b) produces a different result. Whereas a violation of § 4–106(a) results in a mortgage that is void against creditors without notice, noncompliance with the requirement of an affidavit of disbursement results in a deed of trust that is "wholly void" and "of no effect." *Dryfoos,* 268 Md. at 404, 302 A.2d 28.

In the present case, there was an affidavit of disbursement. The affidavit, however, was false. Although the affidavit stated that the money was disbursed not later than the "execution and delivery" of the deed of trust, no money was disbursed at the time. A deed of trust with a materially false affidavit should not be given greater status than a deed with no affidavit. *See Kline v. Inland Rubber Corp.,* 194 Md. 122, 134, 69 A.2d 774 (1949) (" 'The statement thus made in the affidavits being fictitious, it is just as ineffective as if it had

been omitted' ") (quoting *Groh v. Cohen,* 158 Md. 638, 149 A. 459 (1930)).

As stated by the circuit court:

Real Property, Section 4–106(b) requires attachment of an affidavit to a mortgage or deed of trust affirming that the actual sum of money advanced at the closing was paid over and disbursed by the secured party (here Ameriquest), no later than the time of the execution and delivery of the mortgage or deed of trust. In this case, there is no dispute from Ameriquest that the loan was not funded at the time of the execution and delivery of the deed. Even assuming that the later payment to GreenPoint constituted funding of the March, 2003 transaction, that payment was not made until May 4, 2004, over a year after the closing. Under Section 4–106(a) and (b), Ameriquest's deed was not valid, and recording an invalid deed does not render the transaction valid and enforceable.

The trial court's ruling is consistent with the Third Circuit's opinion in *Lerner,* where the court held that, where money was not advanced as stated in the affidavit, the subsequent advance of the money did not "legalize a void mortgage." 1 F.2d at 91. Accordingly, we affirm the circuit court's order that the March 24, 2003, deed of trust, which did not comply with § 4–106(b), was void.

## II.

■■■ We next consider Ameriquest's assertion that the circuit court should not have considered whether deficiencies in the affidavit voided its deed of trust because any such challenge is time-barred by Maryland's curative statute. We find no merit to this contention.

R.P. § 4–109 provides:

(a) If an instrument was recorded before January 1, 1973, any failure of the instrument to comply with the formal requisites listed in this section has no effect, unless the defect was challenged in a judicial proceeding commenced by July 1, 1973.

(b) If an instrument is recorded on or after January 1, 1973, whether or not the instrument is executed on or after that date, any failure to comply with the formal requisites listed in this section has no effect unless it is challenged in a judicial proceeding commenced within six months after it is recorded.

(c) For the purposes of this section, the failures in the formal requisites of an instrument are:

(1) A defective acknowledgment;

(2) A failure to attach any clerk's certificate;

(3) An omission of a notary seal or other seal;

(4) A lack of or improper acknowledgment or affidavit of consideration, agency, or disbursement; or

(5) An omission of an attestation.

This statute is a curative statute, which "corrects errors in deeds, mortgages, etc., defectively executed or acknowledged." *Wingert v. Zeigler,* 91 Md. 318, 46 A. 1074 (1900). *Accord Dryfoos,* 268 Md. at 404, 302 A.2d 28; *Berean Bible Chapel, Inc. v. Ponzillo,* 28 Md.App. 596, 600–01, 346 A.2d 702 (1975). Curative statutes have been described as follows:

"A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities which in the absence of such an act would be void for want of conformity with existing legal requirements, but which would have been valid if the statute had so provided at the time of enacting."

*Berean Bible,* 28 Md.App. at 600–601, 346 A.2d 702 (quoting 2 SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 41.11 (C. Sands, ed., 4th ed. 1973)). The Court noted that "[t]he test usually used for determining the validity of curative acts may be stated thusly: if the legislature had the power to enact originally the matters now sought to be enacted as curative, such legislation is valid." *Id.* at 601, 346 A.2d 702.

Pursuant to § 4–109, with respect to a deed or other instrument, a "failure to comply with the formal requisites" set forth in the statute has no effect unless it is challenged in a

judicial proceeding within six months of recording the instrument. The "formal requisites" listed in the statute include a "lack of or improper" affidavit of consideration or disbursement. The question in this case is whether the curative statute applies when the affidavit is false, in that the loan did not occur as represented. We agree with the circuit court that the curative statute is inapplicable under these circumstances.

In interpreting the meaning of a statute, we seek to ascertain the intent of the legislature. *In re Damien F.*, 182 Md.App. 546, 958 A.2d 402 (2008). We " 'begin with the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute.' " *Id.* "We may also consider 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Claggett,* 182 Md.App. at 374, 957 A.2d 1083 (quoting *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, 358 Md. 129, 135, 747 A.2d 625 (2000)).

The plain language of the curative statute indicates that it applies only to a failure to comply with "formal requisites." Webster's Dictionary defines "formal" as "following or according with established. form, custom, or rule." Webster's Ninth New Collegiate Dictionary (1987). *See also* BLACK'S LAW DICTIONARY 678 (8th ed. 2004) (defining "formal" as "[p]ertaining to or following established procedural rules, customs, and practices"). Thus, we interpret the phrase "formal requisites" to refer to technical requirements as to form. Accordingly, if there is a failure to comply with technical procedural requirements, it "has no effect" unless it is challenged within six months after it is recorded. Filing an affidavit stating that money was disbursed on a certain date, when there was no disbursement of money as alleged, however, does not qualify as a technical defect as to form.

Because the language of the statute is clear, we do not need to consider the legislative history of § 4–109. *See*

*Doe v. Montgomery County Bd. of Elections,* 406 Md. 697, 712, 962 A.2d 342 (2008) ("If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends."). We note, however, that an earlier version of the statute confirms our construction of the statute as applying only to technical problems with form. Section 99 of former Article 21 provided that a deed or other instrument conveying property that was executed after 1858, and in which "the certificate of acknowledgment or **affidavit of consideration is not in the prescribed form,**" was "made valid," providing that the deed was "in other respects in conformity with the law." Md.Code (1957, 1966 Repl.Vol.), Art. 21, § 99 (emphasis added). This language supports our holding that the curative statute was intended to validate only technical defects in the form of an affidavit.

Our construction of the Maryland curative statute as applying only to technical defects is consistent with the view of curative statutes taken in treatises and by other states. In PAUL E. BASYE, CLEARING LAND TITLES § 204 (2d ed. 1970 & Supp. 2007–2008), a curative statute was explained as "one which corrects errors and irregularities in past acts, transactions or legal procedures and renders them valid and effective for the purpose intended." The author made clear, however, that curative statutes do not apply to all errors. Rather, curative statutes are passed "to validate irregularities in legal proceedings or to give effect to contracts between parties which might otherwise fail for failure to comply with technical legal requirements." BASYE, *supra,* § 206 at 472. Defects "which are not mere informalities or irregularities, but so vital in their character, are beyond the reach of curative statutes." *Id.*

Other state courts have looked to the nature of the error to determine if a curative statute is applicable. In *Bummer v. Collier,* 864 P.2d 453, 457 (Wyo.1993), the Wyoming Supreme Court construed its curative act, which applied to defects in the "formalities" of execution. The Court held that the defect involved, "recording the pages of the property's legal description out of order," was not the type of error cured by the

statute. *Id.* The court held: "A proper legal description of the property affected by the recorded instrument does not constitute a formality, and thus the act will not cure an error in that description." *Id.*

Other jurisdictions similarly have construed curative acts to apply only to technical defects. *See, e.g., Cirelli v. Ent,* 885 So.2d 423, 433 (Fla.Dist.Ct.App.2004) ("Curative legislation only corrects certain minor or technical defects through the passage of time …"); *Crum v. Butler,* 601 So.2d 834, 837 (Miss.1992) ("a curative statute does not cure *any* defect and cannot be held to supply an acknowledgment when in fact there is no acknowledgment") (emphasis in original); *City of Scranton v. O'Malley Mfg. Co.,* 341 Pa. 200, 19 A.2d 269, 272 (1941) (noting that curative act "cured irregularities in the process but did not cure the want of process," court held deed invalid where return of city treasurer of tax sales was fatally defective).

In *McWilliams v. Clem,* 228 Mont. 297, 743 P.2d 577 (1987), Ms. McWilliams sought to nullify a deed which purported to transfer property owned by her and her husband. The notary public fraudulently signed the certificate of acknowledgment that Ms. McWilliams had personally appeared to acknowledge the deed. The court rejected the argument that the forged deed was validated by Montana's curative statute, which applied to deeds that are otherwise valid except for the lack of an acknowledgment. *Id.* at 584. The court stated that "a curative statute cannot breathe life and validity into … void deeds." *Id.* (quoting *Lowery v. Garfield County,* 122 Mont. 571, 208 P.2d 478, 485 (1949)). The curative statute did not validate the deed because Ms. McWilliams, as one of the necessary grantors, never made the grant. *Id.*

Similarly, here, the curative statute did not validate the deed because there was not a mere technicality in the execution of the deed. As the trial court found, not only was the affidavit false in that the money was not disbursed on March 24, 2003, as represented, but the loan subsequently was cancelled by Ameriquest. Although Ameriquest ultimately paid

the GreenPoint mortgage, it did so pursuant to a new Settlement Agreement with Mr. Plant with different terms. As the trial court noted:

> In the Terms section, there are a number of references to the "current loan" and the "new loan," changing the new loan to a fixed rate rather than an adjustable rate, changing the interest rate, and removing a prepayment charge. Ameriquest also waived all lender fees and charges, and agreed to pay all third party fees for the new loan. Plant agreed to cooperate in obtaining a credit report, which could result in a change in the interest rate, and to conduct a new appraisal of the property. There was no argument that the terms of the loans were the same. The Settlement was clearly a separate transaction, and not a fulfillment of the original loan.[7]

This case does not involve a technical defect that can be cured by R.P. § 4–109. Accordingly, the circuit court properly granted summary judgment in favor of Paramount on the basis that Ameriquest's deed of trust was void and unenforceable. We affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

7. Ameriquest was successful in its suit against Mr. Plant in the United States District Court for breach of the Settlement Agreement.